**PROBUS PROPERTIES, Appellant,**

v.

**Harold Dwayne KIRBY, Jr., Appellee.**

No. 05–04–01148–CV.

Court of Appeals of Texas, Dallas.

Aug. 4, 2006.

Rehearing Overruled Sept. 11, 2006.

Daniel B. Jones, Plano, for Appellant.

Paul W. Brown, Law Offices of Paul W. Brown PC, Dallas, for Appellee.

Before Justices WHITTINGTON, MOSELEY, and LANG–MIERS.

## OPINION

Opinion by Justice MOSELEY.

Harold Dwayne Kirby, Jr. sued for specific enforcement of a purchase option under a lease agreement with Probus Properties. The jury returned a verdict in favor of Kirby and the trial court entered judgment granting specific performance of the option. The trial court denied Probus's motion for judgment notwithstanding the verdict and to disregard jury findings. Probus appeals and raises nine issues. Because we conclude there is no evidence to support the finding that Kirby performed the condition precedent to extend the option, that equity does not apply to excuse the failure to perform the condition precedent, and that Probus and not Kirby is entitled to reasonable attorneys' fees, we reverse the trial court's judgment and remand the case to the trial court for entry of a judgment in accordance with our opinion.

### Background

Kirby leased commercial real property from Probus in 2001 under a three-year lease. The lease granted Kirby, for a fee, a one-year option to purchase the property for $200,000 under the terms specified in the lease. The lease also permitted Kirby to extend the option for the years 2002 and 2003, "by paying, on or before January 1 of each respective year, an additional annual Option Fee in the amount of Ten Thousand Dollars ($10,000.00)." Provided that Kirby was not in default and "that the Option Fee and any further Option Fees have been timely paid," Kirby could exercise the option at any time during the option period. If Kirby failed to make any annual payment of option fees, he would forfeit any option fees previously made. Kirby made the original option fee and the first annual option fee payments by personal checks delivered to Probus. These payments are not in dispute.

The next annual option fee was due on or before January 1, 2003. On January 1, Kirby wrote a personal check for $10,000.00 on his account at North Dallas Bank and put the check in the mail slot on Probus's door. Probus deposited the check at its bank on January 2, 2003. On January 6, 2003, Kirby's bank returned the check unpaid with the notation "Drawn Against Uncollected Funds." A few days later, Probus sent Kirby a notice that the option had expired due to non-payment of the option extension fee.

Kirby explained that he had two checking accounts at the time. The day after he delivered the check, January 2, 2003, he became confused as to which bank the check had been drawn on, and mistakenly made his deposits at the wrong bank. Later that day, Kirby looked at his checkbook and realized he had written the check on his North Dallas Bank account, which did not have sufficient funds to pay the check. He drove to North Dallas Bank to make a deposit, but had car trouble and was unable to reach the bank before it closed. The next afternoon, Friday Janu-

ary 3, 2003, Kirby deposited a $10,000 check drawn on his other bank in the North Dallas Bank account. However, because of inactivity in the account and the size of the deposit, North Dallas Bank placed a two-business day hold on the deposit. Kirby testified he was unaware that the bank would put a hold on the deposit. He also testified he did not contact his bank officer about the deposit. The next business day, January 6, 2003, North Dallas Bank returned the check unpaid.

Kirby sued Probus for breach of contract, specific performance of the purchase option, and for a declaratory judgment. Kirby alleged he performed the conditions precedent to extend the option, or, in the alternative, that equity would relieve him of the obligation to satisfy the conditions precedent. The jury found that Kirby had performed the condition precedent in the lease to extend the option for calendar year 2003. It also found in favor of Kirby on questions two through ten relating to Kirby's equitable arguments for relief from compliance with the conditions precedent. Based on the jury findings, the trial court found that Probus had breached the lease with Kirby and rendered judgment granting specific performance of the option to purchase the property and awarding Kirby damages and reasonable attorneys' fees through trial, with conditional awards for appeals.

In its motion for judgment notwithstanding the verdict, to disregard jury findings, and for new trial, Probus argued, among other things, that there was no evidence to support the jury's finding that Kirby performed the condition precedent to extend the option, that equity does not apply to the option, and that Probus was entitled to judgment and its attorneys' fees as found by the jury. The trial court denied the motion.

## DISCUSSION

First we discuss the legal sufficiency of the evidence to support a finding that Kirby performed the condition precedent of paying the extension fee for 2003. We then discuss whether equity applies to excuse a failure to perform a condition precedent in an option. Finally, we address whether the trial court's award of Kirby's attorneys' fees should be reversed and whether Probus is entitled to its attorneys' fees.

### 1. Legal Sufficiency of the Evidence of Performance

■ Probus's first issue challenges the legal sufficiency of the evidence to support finding that Kirby performed the condition precedent in the lease to extend the option for calendar year 2003. To evaluate the legal sufficiency of the evidence to support a finding, we must "determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994); *see also St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 519 (Tex.2002) (plurality op.). We view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005).

■ In a typical option to purchase property, the optionor offers to sell the property on stated terms for a specific period of time and the optionee, for a consideration, is granted the right or option of accepting or not the terms of the offer during the specified time period. *See Sinclair Ref. Co. v. Allbritton,* 147 Tex. 468, 475, 218 S.W.2d 185, 188 (1949); *Rollingwood Trust No. 10 v. Schuhmann,* 984 S.W.2d 312, 315 (Tex.App.-Austin 1998, no pet.); *Hott v. Pearcy/Christon, Inc.,* 663

S.W.2d 851, 853 (Tex.App.-Dallas 1983, writ ref'd n.r.e.). In general, options to purchase property must be exercised in strict compliance with the terms of the option agreement. *Zeidman v. Davis,* 161 Tex. 496, 499, 342 S.W.2d 555, 558 (1961); *Greenbaum v. Cortez,* 644 S.W.2d 510, 511 (Tex.Civ.App.-Corpus Christi 1982, writ dism'd w.o.j.); *Reynolds–Penland Co. v. Hexter & Lobello,* 567 S.W.2d 237, 239–40 (Tex.Civ.App.-Dallas 1978, writ dism'd by agr.).

■■■ By its very nature, an option is time-sensitive. It has long been held that time is of the essence in an option because it is unilateral and for the benefit of the optionee. *Johnson v. Portwood,* 89 Tex. 235, 34 S.W. 596, 598 (1896); *Smith v. Hues,* 540 S.W.2d 485, 488 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.). Even where the agreement does not expressly state that "time is of the essence," time is essential to the option and the holder of the option must comply with the terms of the option within the specified time period. *Thermo Products Co. v. Chilton Indep. Sch. Dist.,* 647 S.W.2d 726, 734 (Tex.App.-Waco 1983, writ ref'd n.r.e.); *Tabor v. Ragle,* 526 S.W.2d 670, 675 (Tex. Civ.App.-Fort Worth 1975, writ ref'd n.r.e.). Thus, "any failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection." *Atterbury v. Brison,* 871 S.W.2d 824, 829 (Tex.App.-Texarkana 1994, writ denied) (Cornelius, J., concurring).

The lease required Kirby to pay an additional option fee of $10,000 on or before January 1 to extend the option for 2003. The option to purchase could be exercised only if the option fees were "timely paid." Although the lease does not contain an express statement that "time is of the essence," the nature of the option and the

language requiring timely payment of the option fees makes time essential to the extension and exercise of the option. *Thermo Products,* 647 S.W.2d at 734.

The evidence reflects that Kirby tendered a personal check for the 2003 option fee by dropping it through the mail slot at Probus's office on January 1, 2003. The efficacy of this check as payment of the option fee is the central issue in this case.

■■■ Kirby argues his act of delivering the check on January 1 and depositing funds sufficient to pay the check before it was presented for payment constituted performance of the terms of the option. However, unless otherwise agreed, an uncertified check is merely a conditional payment for an obligation and payment is made absolute when the check is presented and honored. *Lido Int'l, Inc. v. Lambeth,* 601 S.W.2d 112, 115 (Tex.Civ.App.-Dallas 1980), *rev'd on other grounds,* 611 S.W.2d 622 (Tex.1981). If the check is dishonored, the original obligation remains. *Meaders v. Biskamp,* 159 Tex. 79, 82, 316 S.W.2d 75, 77 (1958). The check suspends the obligation "until dishonor of the check or until it is paid or certified." Tex. Bus. & Com.Code Ann. § 3.310(b)(1) (Vernon 2002). Payment of the check discharges the obligation to the extent of the amount of the check. *Id.* However, the obligation "is no longer suspended upon dishonor because upon dishonor the holder may take action on either the check or the underlying obligation." *Biggs v. World Air Conditioning, Inc.,* 722 S.W.2d 27, 29 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); *see also* Tex. Bus. & Com.Code Ann. § 3.310(b)(3) (if check is dishonored obligee may enforce either instrument or obligation).

Kirby's personal check was merely conditional payment and the condition—payment of the check on presentment—was never fulfilled. The lease did not specify

the manner of payment, but required the option fee be paid on or before January 1. Kirby chose to tender a personal check for the option fee on the last day possible. The effect of the check was to suspend his obligation to pay the fee until the check was either paid or dishonored. Tex. Bus. & Com.Code Ann. § 3.310(b)(1). The evidence is undisputed that after the deadline, the check was returned unpaid and dishonored. Id. § 3.502(b)(1) (check is dishonored if payor bank makes timely return of check). Once the check was dishonored, it no longer served to suspend the obligation and the time for payment of the extension fee had expired. Thus, Kirby failed to pay the option fee on or before January 1, 2003 as required by the terms of the option. We conclude there is no evidence to support the jury's finding that Kirby performed the condition precedent to extend the option.

We resolve Probus's first issue in its favor.

## 2. Does Equity Apply to Excuse Non-performance?

The trial court's judgment found, based on the jury's answers, that Probus breached the contract with Kirby. The judgment does not indicate whether this determination was based on the finding that Kirby performed the condition precedent or on the trial court granting Kirby equitable relief from performance of the condition precedent to extend the option. Kirby argues equity will excuse nonperformance of the condition precedent and this supports the judgment. Relying on language in *Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265 (1939), Kirby asserts that equity will excuse non-performance of an option where the failure was the result of an honest and justifiable mistake, any delay was slight, any loss to the optionor was slight, and cancelling the option would result in unconscionable hardship to the optionee. This equitable rule is sometimes referred to as the doctrine of disproportionate forfeiture. Thus, Kirby argues the jury's findings in questions two through ten support the application of equity to relieve him from performance of the condition precedent to extending the option. In its second issue, Probus argues the doctrine of disproportionate forfeiture does not apply to this option and the jury's findings in questions two through ten are immaterial.

In *Jones*, Gibbs had purchased timber under a timber deed with the right to remove the timber for ten years. The timber deed gave Gibbs a right, "in the nature of an option," to extend the time to remove the timber for five years by the payment of a small annual fee. *Jones*, 130 S.W.2d at 268. At the end of the ten year period, two-thirds of the timber remained uncut. Gibbs paid the first annual extension fee, under a written direction from the administrator of the grantor's estate, to a creditor of the estate. *Id.* 130 S.W.2d at 271. Gibbs paid the next year's fee to the creditor without a written direction, but after the administrator had talked to the creditor about receiving the extension fee as a credit on the debt. *Id.* The administrator later objected to this payment and filed suit to declare the timber deed expired.

The commission of appeals concluded the right was extended when Gibbs timely paid, at the administrator's direction, the annual rental fee to the creditor. *Jones*, 130 S.W.2d at 270–71 ("[T]he testimony, including that of [the administrator], which we have carefully examined, in our opinion clearly shows that [the administrator] gave his consent that this rental be paid to [the creditor] and intended, at least until after its payment, that it should be so paid."). The commission then assumed that if the evidence did not establish the authoriza-

tion to make the payment to the creditor, the case was one for application of equity to excuse failure to strictly comply with the terms of an option. The commission then discussed authorities from other states that had recognized equitable exceptions to the rule of strict compliance under varying circumstances. *Id.* 130 S.W.2d at 272.

Kirby's reliance on *Jones* is misplaced. First, the facts in *Jones* are distinguishable from this case. The commission recognized the unusual nature of the "option" in that case: Gibbs "acquired under the deed a right or privilege differing . . . from the ordinary option to buy." *Jones,* 130 S.W.2d at 268. Normally, the holder of an option pays only a consideration for the option and does not pay the purchase price of the property until the option is exercised. Gibbs, however, paid the full consideration for the timber at the time of the original deed and was given an option to extend the time for removing the timber for a relatively small sum. *Id.* Because of the "differences between the option for extension granted by the deed to [Gibbs] and the ordinary option to buy land, . . . the equities in favor of [Gibbs], on account of their having paid the purchase price for all of the timber and having removed less than one-third of it, should not be disregarded." *Id.* at 269.

The option in this case and the fee required to extend it are part of a traditional option. In the lease, Kirby paid $1000 for a one-year option to purchase the property for the sum of $200,000. He could extend the time to exercise that option for up to two years by paying an additional consideration of $10,000 each year. If Kirby timely exercised the option, the option and extension fees would be applied to the purchase price, but if he failed to make the annual payments, the option and extension fees were forfeited to Probus. Thus, un-

like *Jones,* Kirby did not pay the full price of the property in advance.

Second, in *Reynolds–Penland Co. v. Hexter & Lobello,* this Court determined that the discussion of the doctrine of disproportionate forfeiture was not necessary to the decision in *Jones* because the commission concluded the evidence established the administrator had directed the payment be made to the creditor of the estate. 567 S.W.2d at 240–41. In *Reynolds–Penland,* the lessee simply forgot to exercise the option and admitted that the lessor had done nothing to mislead him. *Id.* at 239. This Court concluded that equity would not intervene where the lessee merely neglected to read the lease and to exercise its option. *Id.* at 241.

Because the option in this case does not include any of the unusual features described in *Jones,* we conclude the doctrine of disproportionate forfeiture discussed in *Jones* does not apply to the facts of this case. Therefore, the doctrine should not have been submitted to the jury and the jury's findings response to questions two through ten are immaterial. *See Casa El Sol–Acapulco, S.A. v. Fontenot,* 919 S.W.2d 709, 717 (Tex.App.-Houston [14th Dist.] 1996, writ dism'd by agr.) ("Because the doctrine of disproportionate forfeiture was not applicable in this instance, it should not have been submitted as a jury issue."). An appellate court may disregard a jury finding on a question that is immaterial. *See Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994). A jury question is immaterial if it should not have been submitted, if it was rendered immaterial by other findings, or if it called for a finding not within the jury's province, such as a question of law. *Id.* Because the jury's answers to questions two through ten were immaterial, the trial court should have disregarded them on Probus's motion for judgment notwith-

standing the verdict. *See Southeastern Pipe Line Co. v. Tichacek,* 997 S.W.2d 166, 172 (Tex.1999).

We resolve Probus's second issue in its favor.

### 3. Attorneys' Fees

▆ The jury found the amounts of reasonable attorneys' fees through trial and appeal for both Probus and Kirby. The trial court awarded attorneys' fees to Kirby in the amounts found by the jury. In its ninth issue, Probus argues that if the judgment is reversed, Kirby is no longer a prevailing party under the terms of the lease and the attorneys' fee award must be reversed. Probus also argues it is entitled to attorneys' fees if the judgment is reversed because it prevailed in defending its rights under the lease.

▆ Generally, attorney's fees may not be recovered "unless provided for by statute or by contract between the parties." *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.,* 835 S.W.2d 75, 77 (Tex.1992). Under our general attorneys' fees statute, attorneys' fees may not be recovered for successfully defending a contract claim. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997) (party may recover reasonable attorneys' fees *"in addition to* the amount of a valid claim and costs, if the claim is for: ... an oral or written contract."); *Mustang Pipeline, Inc. v. Driver Pipeline, Inc.,* 134 S.W.3d 195, 201 (Tex. 2004). However, parties to a contract may provide by agreement that the prevailing party is entitled to recover attorney's fees. *Weng Enters. v. Embassy World Travel,* 837 S.W.2d 217, 222–23 (Tex.App.-Houston [1st Dist.] 1992, no writ). The "prevailing party" is the party who successfully prosecutes or defends the action on the main issue. *Id.* at 223.

Paragraph twenty-two of the lease provides that if, due to any breach or default,

it becomes necessary for one of the parties to retain an attorney to "enforce or defend any of its rights or remedies hereunder," the prevailing party will be entitled to reasonable attorneys' fees. Under the terms of this lease provision, a party need only "prevail" in enforcing or defending its rights or remedies under the lease to be entitled to attorneys' fees.

Kirby argues there was no breach or default by the landlord or tenant to trigger the attorneys' fees paragraph. However, Probus was required to defend Kirby's allegations that Probus breached the lease by refusing to extend the option period and by declaring the option expired. Probus was required to employ an attorney as a result of the alleged breach of the lease to "defend any of its rights or remedies" under the lease. Probus pled for attorneys' fees under lease in its second amended answer. We have determined that Probus should have prevailed in its defense. Thus, under the specific language of this lease, Kirby is not entitled to his attorneys' fees. Further, Probus is entitled to its attorneys' fees because it prevailed in defending its rights to timely payment of the extension fee for the option.

We resolve Probus's ninth issue in its favor.

### CONCLUSION

We need not reach Probus's other issues. TEX.R.APP. P. 47.1. We note that the trial court's judgment disposed of certain deposits in the court's registry. We reverse the judgment of the trial court and remand to the trial court for the limited purpose of (1) entering judgment that Kirby take nothing by this suit and that Probus recover from Kirby its reasonable attorneys' fees as found by the jury; (2) determining the proper disposition and/or credits—in accordance with this opinion—of all sums on deposit in the registry of the

court; and (3) awarding of costs and interest on the judgment.