**E.P. TOWNE CENTER PARTNERS, L.P., Appellant,**

v.

**CHOPSTICKS, INC., Appellee.**

No. 08–06–00221–CV.

Court of Appeals of Texas, El Paso.

Nov. 15, 2007.

Corey W. Haugland, James, Goldman & Haugland, P.C., El Paso, for Appellant.

Robert Gilbert, The Gilbert Law Firm, P.C., El Paso, for Appellee.

Before McCLURE, J., CARR, J., and ABLES, J.

## OPINION

KENNETH R. CARR, Justice.

Appellee has filed a motion for rehearing in this case on three grounds. Appellee asserts that the Court made two substantive errors in its analysis. First, Appellee asserts the Court erred by focusing its analysis of Appellee's non-performance to the issue of breach and by not addressing the materiality of that breach. Second, Appellee asserts the Court erred by not considering evidence of latent ambiguity and in concluding that the settlement agreement was unambiguous. Third, Appellee urges the Court to modify and clarify its judgment. Appellee's motion for rehearing is denied regarding the substantive issues raised. Appellee's motion for rehearing for the purpose of modifying and clarifying the judgment is granted. The Court's opinion of August 23, 2007, is withdrawn, and the following is issued in its place.

This is an appeal from the trial court's dismissal of the motion for entry of judgment of Appellant, E.P. Towne Center Partners, L.P. ("Towne Center"), which is based on a mediated settlement agreement. Because the trial court erred in determining that Appellee, Chopsticks, Inc. ("Chopsticks"), had complied with the terms of the settlement agreement, we will reverse and render judgment in favor of Appellant.

## FACTUAL AND PROCEDURAL BACKGROUND

This suit arose from a lease dispute between Towne Center and its tenant, Chopsticks. Chopsticks signed a lease in 1997 to rent a restaurant location in Towne Center's shopping center in the eastern part of El Paso. In 2005, Chopsticks filed a breach of contract action against Towne Center, alleging that the landlord had violated the contract's exclusivity clause by leasing space in the shopping center to a second Asian-style restaurant. Towne Center responded by filing a counter-claim for breach of contract, alleging Chopsticks had failed to make numerous rental payments. The parties attended a meditation on January 21, 2006, at the conclusion of which both entities signed a (mostly) hand-written Rule 11 Agreement ("the agreement" or "the settlement agreement") settling both breach of contract claims. The agreement provided, in pertinent part, as follows:

(1) Chopsticks, Inc. shall pay L.P.[Towne Center] $40,000.00 on or before February 1, 2006; then $7,902 by Feb. 7, 2006; then monthly installments of $7,902 for March, April and May, 2006, on or before the 7th of each month;

(2) The parties will bear their own attorney's fees and costs;

(3) The parties will execute a mutual release;

(4) The parties will agree to keep the terms of settlement confidential, with a liquidated damages provision of $15,000.00, with losing party to any lawsuit to pay attorney's fees;

(5) The lawsuit will be dismissed with prejudice; and

(6) In the event that Chopsticks fails to pay $40,000.00, on or before Feb[.] 1, 2006, or any monthly installment by its due date, L.P. may submit a judgment

to the Judge in Case No.2005–6454 that provides for damages of $10,000.00, plus all unpaid installments, attorney fees of $5,000.00, with contingent awards of $7,500.00 to Court of Appeals, and $7,500.00 to the Texas Supreme Court, plus past judgment % at the rate of 6%.

Chopsticks paid the initial $40,000 settlement payment on time. Chopsticks also tendered a check for the February 7 installment.[1] Towne Center attempted to deposit the check on March 2, but it was returned due to insufficient funds. Towne Center contacted Chopsticks to secure an alternative payment and, in a later conversation, was instructed to redeposit the check. Towne Center was not able to do so, because it was no longer in possession of the instrument. There is some evidence that the parties may have attempted to negotiate an alternative payment method following the check's return. However, there is conflicting testimony regarding whether Towne Center specifically asked for either a cashier's check or money order to replace the declined check. Towne Center received Chopsticks' March installment on March 7. Towne Center deposited the March payment without incident.[2]

Towne Center filed a motion for entry of judgment based on the settlement agreement, on April 3, 2006. On April 11,

Chopsticks tendered a cashier's check to Towne Center for $10,837.50. This sum represented the February and April installments, less the amount of Chopsticks' security deposit. Towne Center rejected the tender from Chopsticks.

Chopsticks filed a response to Towne Center's motion for entry of judgment on May 3, 2006. Chopsticks then deposited $18,739 with the district clerk. The deposit included installment payments for February, April, and May according to the agreement, minus the amount of Chopsticks' security deposit.

A hearing was held on May 8, 2006. Chopsticks argued that the agreement was fatally deficient, because it lacked certain essential terms. Chopsticks' counsel described negotiations which took place subsequent to the mediation. He explained that, during the subsequent negotiations, the parties discussed how the premises were to be vacated and the return of the security deposit.[3] Towne Center explained that these subsequent negotiations failed to produce a final agreement.

On May 22, the trial court denied Towne Center's motion for entry of judgment. On June 30, the trial court issued findings of fact and conclusions of law. The court concluded that the agreement was incom-

1. There is some dispute as to when the February payment was received. The check was dated February 7. Towne Center's attorney stated in opening argument that he received the check and mailed it to Towne Center's property manager. The check was returned because Towne Center's attorney had the wrong address for the property manager. The property manager received the check on February 15.

2. On March 14, Towne Center's property manager sent a letter to Chopsticks indicating the balance owed, due to the missing February payment. The letter asserted that Chopsticks' original security deposit was not available to cover the deficiency, as it had been

applied to the tenant's balance for previously-unpaid rent prior to the parties' legal disputes. However, Towne Center later admitted that it was unable to locate records identifying when and how the deposit had been applied, and it credited Chopsticks for the amount.

3. In its response to Towne Center's motion for entry of judgment, Chopsticks attached an unsigned, typewritten document entitled "Compromise and Settlement Agreement." The document identified in detail when and how Chopsticks was to vacate the premises and how the parties would apply the security deposit to the amount owed.

plete and ambiguous concerning key issues of the settlement, specifically the timing for Chopsticks to vacate the premises and the disposition of the security deposit. The trial court also concluded, as a matter of law, that Chopsticks had fulfilled its obligations under the terms of the settlement agreement. Towne Center appeals.

In Issue One, Towne Center argues that the trial court erred in determining that the settlement agreement was ambiguous and that it did not contain certain essential terms. In Issue Two, Towne Center argues that the evidence is legally and factually insufficient to support the trial court's conclusion that Chopsticks complied with the terms of the settlement agreement.

## DISCUSSION

The trial court denied Towne Center's motion for entry of judgment on the ground that the agreement was "incomplete and ambiguous concerning key issues relative to the settlement achieved by the parties . . . ." In Issue One, Towne Center contends that this conclusion was in error, because the agreement contained all terms necessary for its enforcement.

■■ The interpretation of a settlement agreement is subject to the law of contracts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 154.071; *Browning v. Holloway*, 620 S.W.2d 611, 615 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.). There is a significant legal difference between a contract's silence-i.e., its failure to address a particular issue-and the presence of an ambiguity in the contract language. *See Thompson v. CPN Partners, L.P.*, 23 S.W.3d 64, 71 (Tex.App.-Austin 2000, no pet.). When a contract is silent on a particular issue, the court must determine the effect of the silence. *See id.* Contract ambiguity, on the other hand, is a question of interpretation. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462,

464 (Tex.1998). A contract term is ambiguous when it is subject to two or more reasonable interpretations. *Id.*

The trial court identified the "timing for [Chopsticks] to vacate the leasehold premises" and "the refund of [Chopsticks'] security deposit," as critical to the settlement agreement. Although the trial court included a finding of ambiguity in its decision, the terms which the court identified as the bases for its finding are completely absent from the text of the agreement. Therefore, we will limit our discussion to the effect of the contract's silence on these issues.

■■ A contract is legally binding, only when it contains terms which are sufficiently definite to enable a court to understand the parties' intentions. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000). Specifically, the agreement must identify a basis for determining the existence of a breach and provide for the appropriate remedy. *See Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 133 (Tex.App.-Waco 2005, pet. denied) (citing Restatement (Second) of Contracts § 33(2) (1981)). Where the parties have intended to conclude a bargain, the agreement's silence as to non-essential, or collateral, matters is not fatal. *See West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 259 (Tex.App.-Austin 2002, no pet.) (parties need not settle all pending issues for mediated settlement agreement to be enforceable, but may agree on certain severable issues, while not resolving the entire dispute). Whether a settlement agreement fails for lack of an essential term is a question of law for the court to determine. *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

■■ The settlement agreement in this case provides for the mutual release of the

parties' claims and dismissal of the underlying suit with prejudice. The agreement specifically describes the amount of money Chopsticks was obligated to pay and includes an installment schedule for timely payment. The parties also agreed on what would constitute a breach of the agreement (non-payment by the due dates) and identified the available remedy (entry of judgment, any amounts owed, etc.). These terms make clear that a failure to pay the amount specified according to the agreed schedule would constitute a breach. While the issues cited by the trial court may have been significant to the parties' relationship, the disposition of Chopsticks' security deposit and the date by which it was required to vacate the premises were collateral matters. The agreement's silence on those issues does not affect its validity. Because the agreement did not lack essential terms, we sustain Towne Center's first issue.

In Issue Two, Towne Center contends that the evidence in support of the trial court's conclusion that Chopsticks complied with the terms of the Rule 11 agreement is legally and factually insufficient. Towne Center argues, first, that it established that Chopsticks had breached the agreement when it showed that the February installment check was dishonored. Second, Towne Center argues that Chopsticks failed to present any evidence that it had, in fact, complied with the terms of the agreement.

■■■■ A party challenging the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof at trial must demonstrate that the evidence conclusively established all vital facts in support of the issue, as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001); *Carrasco v. Stewart*, 224 S.W.3d 363, 367 (Tex.App.-El Paso 2006, no pet.). In a "matter of law" challenge, the reviewing court must first examine the record for evidence in support of the adverse finding, while ignoring all evidence to the contrary. *Francis*, 46 S.W.3d at 241. The reviewing court must indulge every reasonable inference to support the finding, crediting favorable evidence if a reasonable jury could and disregarding contrary evidence, unless a reasonable jury could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005). If there is no evidence to support the adverse finding, the court must then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Francis*, 46 S.W.3d at 241. The reviewing court will sustain such a challenge only if the contrary proposition is conclusively established. *Id.*

■■■■ A breach of contract claim requires the plaintiff to prove that (1) a valid contract existed, (2) the plaintiff performed, (3) the defendant breached, and (4) the plaintiff has suffered damages as a result. *Prudential Securities, Inc. v. Haugland*, 973 S.W.2d 394, 396 (Tex.App.-El Paso 1998, pet. denied). A party breaches a contract by failing to perform when that party's performance is due. *See TeleVentures, Inc. v. International Game Tech.*, 12 S.W.3d 900, 910 (Tex.App.-Austin 2000, pet. denied); *see also* Restatement (Second) of Contracts § 235(2) (1981) ("When performance of a duty under a contract is due any non-performance is a breach"). A breach of contract claim accrues immediately at the time that the contract is breached. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002). Whether a party's conduct constitutes a breach is a question of law for the court to determine. *See XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). A fact question exists on the issue of breach only

to the extent that there is a dispute as to whether a party performed. *See id.*

■ Towne Center asserts that the record contains uncontradicted evidence that Chopsticks failed to make the February payment, as required by the agreement. Chopsticks does not dispute that the February 7 check was returned. Instead, Chopsticks argues that it satisfied the terms of the settlement agreement by citing Towne Center's delay in depositing the check; Towne Center's "inconsistent behavior" concerning the security deposit; Chopsticks' urging to redeposit the check when it was returned for insufficient funds; Chopsticks' offer of payment in April; and the deposit of all funds due into the registry of the Court. Chopsticks argues that this evidence supports the trial court's ruling. We disagree.

Although the date of the tender is in question, there is no dispute that Chopsticks tendered a check for the February 7 payment. Towne Center deposited that check on March 2. The bank rejected the check due to insufficient funds. Towne Center called Chopsticks to secure a replacement payment for the rejected check. Chopsticks did not tender any replacement payment until April 11, after Towne Center filed the motion for entry of judgment. These facts are uncontested and do not support a finding of performance.

■ An uncertified check is merely a conditional payment for an obligation and payment is made absolute when the check is presented and honored. *Probus Props. v. Kirby*, 200 S.W.3d 258, 262 (Tex.

App.-Dallas 2006, pet. denied). When one is presented with an uncertified check, the obligation due under the agreement is suspended until the check is dishonored or until it is paid or certified. Tex. Bus. & Com.Code Ann. § 3.310(b)(1); *Probus*, 200 S.W.3d at 262. If the check is dishonored, the obligee may enforce either the instrument or the obligation. Tex. Bus. & Com. Code Ann. § 3.310(b)(3); *Probus*, 200 S.W.3d at 262.

Chopsticks' tender of a check on February 7 was not performance of its obligation under the agreement until the check was presented and honored. *See Probus*, 200 S.W.3d at 262. When the check was returned for insufficient funds, Chopsticks was in breach of the agreement. When the breach was not cured and the parties were unable to agree on an alternative remedy, Towne Center chose to exercise its option for enforcement under the contract.[4] *See* Tex. Bus. & Com.Code Ann. § 3.310(b)(3).

■ Chopsticks argues that the trial court's conclusion was not in error, based, in part, on theories of estoppel and substantial performance. Chopsticks asserts that Towne Center waived any alleged breach in the February payment by accepting Chopsticks' March installment payment, and it is therefore estopped from denying that the terms were satisfied. Estoppel is an affirmative defense which must be plead under the Texas Rules of Civil Procedure. Tex.R. Civ. P. 94. Chopsticks does not cite, and we have been unable to find, any such pleading in the record. In addition, regardless of the

---

4. Chopsticks also cites the fact that Towne Center did not immediately deposit the February 7 check as evidence in support of the trial court's conclusion. However, this has no bearing on Chopsticks' breach. The drawer of a check is responsible for its payment for 90 days after its date. *See* Tex. Bus. & Com. Code Ann. § 3.304(a)(2). Towne Center pre-

sented the check within 30 days of its date. Since Chopsticks was still responsible for the payment at the time the check was deposited and would have satisfied its obligation under the agreement only if the check were honored, Towne Center's delay in presenting the check for payment had no bearing upon, and did not justify, Chopsticks' breach.

facts of Chopsticks' performance before or after its failure to perform, the doctrine of substantial performance is not available to a party whose breach involves the omission of essential performance. *See Smith v. Smith,* 112 S.W.3d 275, 279 (Tex.App.-Corpus Christi 2003, pet. denied). As we have already discussed, the payment schedule was an essential term of this agreement, the non-performance of which prevents other performance by Chopsticks from being "substantial." *See id.*

 Chopsticks continues by arguing that, since only one out of five payments was untimely, its breach, if any, was immaterial. In support of this argument, Chopsticks relies on the evidence of: (1) its instruction to Towne Center to redeposit the February 7 check; (2) its offer of a cashier's check as a compromise for the returned check; and (3) its deposit of the remaining payments into the court's registry. As we have noted above, any non-performance when a party's performance is due is a breach. *See International Game Tech.,* 12 S.W.3d at 910. Evidence that other payments were timely made does not negate evidence of the breach, because a cause of action for breach of a contract calling for periodic payments accrues for each missed payment. *See F.D. Stella Prods. Co. v. Scott,* 875 S.W.2d 462, 465 (Tex.App.-Austin 1994, no writ). Therefore, evidence that Chopsticks made other payments according to the dates specified in the agreement does not affect whether the contract was breached via the dishonored February 7 check.

 Finally, Chopsticks argues that Towne Center's inconsistent behavior regarding the security deposit supports the trial court's conclusion. Evidence that Towne Center acted inconsistently regarding the security deposit does not support the conclusion that the Chopsticks performed the obligation due on February 7. Towne Center's behavior concerning the security deposit, even if inconsistent and/or confusing, did not begin until at least March 14, when it sent the first letter indicating consumption of the security deposit. When Chopsticks tendered an insufficient-funds check in February, it did so without any knowledge of Towne Center's future behavior in March. Indeed, evidence concerning Towne Center's behavior tells us nothing about Chopsticks' performance.

Neither Chopsticks' cited evidence nor our own review of the record supports the trial court's conclusion that Chopsticks complied with the settlement agreement. As the only remaining evidence is that establishing Chopsticks' non-payment and breach of its obligation, the evidence is legally insufficient to support the trial court's conclusion. In addition, because Towne Center established Chopsticks' non-performance as to the February payment date, we hold that Chopsticks was in breach, as a matter of law. Therefore, Towne Center's second issue is sustained on legal insufficiency grounds.[5]

Having sustained both of Appellant's issues, we reverse and remand the cause to the trial court to render judgment in favor of Towne Center pursuant to the parties' settlement agreement as follows: Towne Center is awarded $10,000 for damages, $18,739 as deposited by Chopsticks in the registry of the district court in cause number 2005-6454, representing settlement payment for February, April, and May, 2006, $5000 in attorneys' fees in the trial court, and $7,500 for attorneys' fees on

---

5. Because we have determined that the evidence is legally insufficient to support the trial court's conclusion, there is no need for us to address Towne Center's factual sufficiency challenge. *See* Tex.R.App. P. 47.1.

appeal. Furthermore, Towne Center is awarded post-judgment interest, as provided in the agreement at a rate of 6 percent, to be calculated by the trial court on remand and included in the judgment.

ABLES, J., sitting by assignment.