

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00128-CV
_____


EASTMAN GAS COMPANY, L.L.C., F/K/A FAIRPLAY GAS, Appellant

V.

GOODRICH PETROLEUM COMPANY, L.L.C., Appellee


On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. 2010-328


Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Moseley


_____

*Jack Carter, Justice, Retired, Sitting by Assignment

## O P I N I O N

Eastman Gas Company, L.L.C. (Eastman),[1] operates a service as an intermediate transporter of natural gas. Under this service, Eastman collects natural gas from the wellheads or collection points of gas producers, meters the amount collected, transports the gas in its pipeline to points of sale, collects from the purchasers, and then pays the producer of the natural gas, reserving unto itself a fee for the collection, transportation, and marketing of the natural gas. Eastman and Goodrich Petroleum Company, L.L.C. (Goodrich), entered into a written agreement for all aspects of this service. During 2007, Goodrich employed an independent auditor to review its first two years (January 2005 through December 2006) of dealings with Eastman and, according to that auditor, was credited by Eastman for a substantial amount less than that for which it was paid. Confronted by the audit, Eastman disputed the methods employed by Goodrich's auditor and, thus, the results of the audit. The two companies were at an impasse until Goodrich finally, eventually, refused to pay Eastman's billing for its services, prompting Eastman to bring suit against Goodrich.[2] This suit alleged a breach of contract and sought a declaratory judgment. Goodrich responded to the lawsuit by filing a counterclaim for breach of contract, alleging that according to the 2007 audit, Eastman failed to credit Goodrich for a large amount of gas collected and delivered and that, therefore, Eastman owed millions of dollars.

---

[1]At the time of the contract, Eastman was known as Fairplay Gas.

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

The parties eventually entered into a Rule 11 agreement. *See* TEX. R. CIV. P. 11. Pursuant to that agreement, the parties agreed to retain an independent auditor (whose fees were to be shared equally by the parties) to conduct an audit of their dealings together. The findings of that auditor as to the volume of gas supplied by Goodrich and shipped by Eastman and the amount which Goodrich admittedly had not paid Eastman were to be determined so as to "resolve all conflicts" between the parties, and a settlement agreement was to be drafted to monument that resolution.

The agreed-upon independent auditor concluded in his 2012 audit that there was 323,024 MMBTU[3] of natural gas supplied by Goodrich to Eastman that had not been properly credited to Goodrich during the two-year audit period, an amount that exceeded even that of Goodrich's 2007 audit. Pursuant to the terms of their contractual agreement, Eastman owed Goodrich an additional $2,187,280.14 in payment for the gas that it had credited.

The parties apparently believed that if they followed the procedures set out in the Rule 11 agreement, those procedures would resolve all the conflicts between them; they were apparently in error. Unfortunately, after the parties followed through with the audit prescribed, the bases for conflict seemed to evolve from those areas addressed in the Rule 11 agreement (that had been in open conflict) into ones that were pronouncedly different from the ones originally contemplated. Eastman took the position that the Rule 11 agreement called for incorporation of the terms of the contract, which contains a provision that conditions any recovery by Goodrich on there being a variance in the payment amount in excess of two percent over the two-year period under

---

[3]MMBTU stands for one million British Thermal Units.

examination. Eastman moved to enforce the Rule 11 agreement as it perceived the agreement to be, saying that pursuant to the contract's notice and two percent variance provisions, Eastman was not liable for the difference in the amount actually paid and that amount deemed to have been due. In the alternative, Eastman claimed the Rule 11 agreement to be unenforceable because it was excessively vague.

Goodrich also moved to enforce the Rule 11 agreement, arguing that according to the auditor's findings, the terms of the contract, and the terms of the Rule 11 agreement, it was entitled to judgment. The parties did not dispute the 2012 audit's findings, but rather, the parties disagreed on how those findings applied to the contract. After a hearing on the parties' motions, the trial court awarded Goodrich a total of $3,034,766.40 in principal and interest, as well as 5.25 percent post-judgment interest, offset by $308,542.42 in unpaid invoices in favor of Eastman.

On appeal, Eastman contends that the trial court erred because (1) the Rule 11 agreement is unenforceable; (2) under the two percent variance provision, Goodrich is not entitled to payment for the under-credited gas; and (3) Eastman alleged that the date Goodrich gave notice was not timely, this being an unanswered question of fact which prevented entry of judgment.

## I.    Standard of Review and Nature of the Trial Proceedings

The parties disagree on the nature of the proceedings at trial as well as the applicable standard of review on appeal. Eastman contends that because the Rule 11 agreement and the original pact between the parties are contracts, the posture of the hearing "was effectively one of cross motions for summary judgment on a contract." It maintains that under a summary judgment, questions of law should be reviewed de novo, factual issues must be given every

4

reasonable inference, and all doubts resolved in its favor as the non-movant. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Goodrich denies that the hearing was one for summary judgment, arguing that the trial court held hearings on competing motions to enforce a settlement agreement. Because no motions for summary judgment were filed, Goodrich's argument continues, the trial court's factual findings must be reviewed under an abuse of discretion standard and its rulings of law reviewed de novo. *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656 (Tex. 1996) (per curiam).

Here, the hearing addressed the parties' respective motions to enforce the Rule 11 agreement. At the hearing, the parties argued their respective cases but, somewhat strangely, neither of the parties called a witness and neither introduced any of the pertinent and controlling documents into evidence. After the hearing was over, the trial court took the case under advisement and, via letter, requested information from Goodrich regarding the date it alleged it had given Eastman notice that it disputed the amount paid. In response, Goodrich provided copies of several emails, but Eastman disputed both the content of and meaning of those emails. The trial court applied the auditor's findings, construed the provisions of the contract, and ruled in favor of Goodrich, while granting Eastman an offset.

Neither party filed a motion for summary judgment or a statement of undisputed facts. Consequently, there is no summary judgment evidence in the record, and neither the contract between the parties, nor the Rule 11 agreement, nor the auditor's report rendered as a result of the parties' Rule 11 agreement, nor any of the contested emails were properly authenticated so as to constitute competent summary judgment evidence. *See Republic Nat'l Leasing Corp. v.*

5

*Schindler*, 717 S.W.2d 606, 607 (Tex. 1986) (per curiam); *see also Niu v. Revcor Molded Prod. Co.*, 206 S.W.3d 723, 729 (Tex. App.—Fort Worth 2006, no pet.). Although there was neither a request for findings of fact nor a request for conclusions of law, the final judgment included findings of fact regarding the issue of notice. Further, Eastman's motion for new trial failed to raise the argument that the hearing was a summary judgment and, instead, contended that the judgment "rests on a judge-made fact finding when Eastman asked for a jury."[4]

We find the trial proceeding was a bench trial on competing motions to enforce a settlement agreement and not a summary judgment proceeding. "When a matter involving both factual determinations and legal conclusions is decided by the trial court, Texas appellate courts generally use an abuse of discretion standard of review." *Ex parte Myers*, 68 S.W.3d 229, 231 (Tex. App.—Texarkana 2002, no pet.). In applying this standard, we defer to the trial court's factual determinations so long as they are properly supported by the record, and we review legal determinations made by the trial court de novo. *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex. App.—San Antonio 1996, no writ) (per curiam).

Again, we note that the parties neither called a witness nor admitted evidence into the record during the trial proceeding. However, it is plain from the record that there was evidence upon which the trial court could base its judgment, because "evidence that is not objected to and that the trial court and the parties treat as admitted is, for all practical purposes, admitted." *Tex. Health Enters., Inc. v. Tex. Dep't of Human Servs.*, 949 S.W.2d 313, 314 (Tex. 1997); *DaimlerChrysler Corp. v. Brannon*, 67 S.W.3d 294, 300 (Tex. App.—Texarkana 2001, no pet.).

---

[4]On appeal, Eastman does not contend that the trial court erred by denying its motion for new trial.

6

In the *Texas Health Enterprises* case, an administrative record was never admitted into evidence, but "both parties relied on the administrative record in their arguments[,] and the trial court based its decision upon the administrative record." *Tex. Health Enters., Inc.*, 949 S.W.2d at 313–14. Here, both parties and the trial court all treated the contract, the Rule 11 agreement, and the auditor's report as if they had been admitted into evidence. No objections were lodged by either party to their use in trial court, and they formed the bases of both the parties' arguments and the trial court's judgment. Accordingly, they were, for all practical purposes, admitted into evidence at trial.

## II.    Is the Rule 11 Agreement an Unenforceable Agreement to Agree?

In its first point of error, Eastman argues that the Rule 11 agreement is unenforceable because it fails for lack of essential terms and is nothing more than an unenforceable "agreement to agree."

"A settlement agreement satisfies the requirements of Rule 11 if it is (1) in writing, (2) signed, and (3) filed with the court or entered in open court . . . ." *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied) (citing TEX. R. CIV. P. 11; *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995)). The enforceability of a settlement agreement is a question of law. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (per curiam); *Martin v. Martin*, 326 S.W.3d 741, 746 (Tex. App.—Texarkana 2010, pet. denied). Whether a term is essential to the enforceability of a contract is determined on a case-by-case basis. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "The issue of whether a [Rule 11] settlement agreement fails for lack of an essential term is a question of

7

law to be determined by the court, unless there is ambiguity or unless surrounding facts and circumstances demonstrate a factual issue as to an agreement." *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

A binding settlement may exist when parties agree upon some terms, understanding them to be an agreement, and leave other terms to be made later. *Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied). When an agreement leaves essential (or material) matters open for future negotiation and those negotiations are unsuccessful, however, the agreement "is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); *see Mattlage v. Mattlage*, 243 S.W.3d 763, 769 (Tex. App.—Waco 2007, pet. denied) ("If an essential term is left open for future negotiation, 'there is nothing more than an unenforceable agreement to agree[.]'" (quoting *Killam*, 87 S.W.3d at 690)); *cf. E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.) ("Where the parties have intended to conclude a bargain, the agreement's silence as to non-essential, or collateral, matters is not fatal."); *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 766 (Tex. App.—El Paso 2004, no pet.) (same); *Mabon Ltd. v. Afri–Carib Enters., Inc.*, 29 S.W.3d 291, 300 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (same). Essential terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.). While "Texas courts favor validating transactions rather than voiding them, a court may not create a contract where none exists and generally may not add,

8

alter, or eliminate essential terms."[5]  *Kelly*, 128 S.W.3d at 766; *T.O. Stanley Boot Co.*, 847 S.W.2d at 222 (observing that courts cannot supply material contract terms); *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 274 (Tex. App.—Dallas 2012, pet. denied) ("Although Texas courts favor validating contracts, we may not create one where none exists."); *Univ. Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ) (observing that jury cannot supply essential contract terms).

The relevant portion of the Rule 11 agreement between Eastman and Goodrich states:

1. An independent, third-party auditor ("Auditor") will audit all relevant data related to the transportation of gas according to the April 5, 2010, Gas Gathering Agreement between [Eastman] and Goodrich, for the production months of January, 2005, through December, 2006, including the gas charts or electronic data generated by the metering stations and conditions and accuracy of the metering stations as documented by Southern Petroleum Labs, and the information related to the blow down and pigging of the lines in the first quarter of 2006;

2. [Eastman] and Goodrich shall exchange proposed Auditors on or before December 19, 2011, at 5:00 p.m.  The Auditor will be chosen and mutually agreed upon by both [Eastman] and Goodrich on or before December 23, 2011;

3. [Eastman] and Goodrich shall submit all materials to the Auditor on or before January 15, 2012. [Eastman] and Goodrich shall submit all additional materials subsequently requested by the Auditor within 15 days of such request;

4. [Eastman] and Goodrich will each pay 50% of the costs for the Audit;

---

[5]Courts have noted, however, occasions in which an agreement may be upheld by supplying missing terms, such as implying a reasonable price. *See Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966); *see also Crest Ridge Constr. Grp., Inc. v. Newcourt, Inc.*, 78 F.3d 146, 152 (5th Cir. 1996) (Benavides, J., concurring) ("Industry custom can fill in missing terms of a contract or determine the meaning of an agreement."); *Tex. Oil Co. v. Tenneco, Inc.*, 917 S.W.2d 826, 830 (Tex. App.—Houston [14th Dist.] 1994) (observing that in certain situations, court may uphold agreement by supplying missing terms but may not create contract where none exists or interject or eliminate essential terms), *rev'd on other grounds sub nom. Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178 (Tex. 1997).

5.    To the extent that the Auditor's methods and calculations are reasonable, all of the Auditor's findings and conclusions rendered in the Audit will be entered as stipulated facts in the record and will not be objected to by either [Eastman] or Goodrich;

6.    In order to determine the reasonableness of the Audit, upon receipt of the audit results, both parties will have five (5) business days to review same and to submit a "Request for Clarification" if needed.  If either party has any questions, concerns or objections relating to the methodology of the audit, that party shall prepare a written objection.  The objection for [sic] shall include the following: (1) identify the specific objection to the methodology; (2) describe why said party believes there is an error; (3) propose the methodology that should be utilized.  The objection shall be delivered to the opposing party and the auditor on or before five (5) business days after receipt of the audit results by 5:00 p.m. Central time.  If no objection is received by the deadline, both parties agree to accept the results of the audit.  If either party submits an objection, the Auditor shall have ten (10) business days to review same and respond.  The response of the Auditor, and the objection shall be included in the stipulated facts with no further objections regarding the audit results or methodology utilized.

7.    Goodrich acknowledges receipt of invoices which [Eastman] claims are unpaid ("Unpaid Invoices"), further [Eastman] agrees to providing any backup or other documentation requested by Goodrich to substantiate the invoices;

8.    [Eastman] and Goodrich agree that they shall resolve all conflicts in, arising out of, or incident to the above referenced matter through a settlement agreement which shall be drafted in accordance with the Auditor findings (including but not limited to any under/over payment(s) for the gas volumes transmitted by Goodrich to [Eastman], if any); the Gas Gathering Agreement, and offset by any Unpaid Invoices (subject to proof of payment); and

9.     Both parties agree to postpone and abate all discovery, which includes [Eastman]'s Responses to Defendant Goodrich Petroleum L.L.C.'s Interrogatories, Requests for Production, and Request for Admission, and Goodrich's Responses to [Eastman]'s First Set of Interrogatories and Request for Production to Goodrich.

The Rule 11 agreement was reduced to writing and signed by both parties.

Eastman contends that the Rule 11 agreement is missing essential terms. First, Eastman argues that paragraph eight (which specifies that a settlement agreement will be drafted in accord with the auditor's findings and the contract) failed to specify how the contract would be applied. Specifically, Eastman alleges that it failed to address the issues of whether Goodrich gave timely notice of any dispute and whether the two percent variance provision applied. Eastman argues that the purpose of the Rule 11 agreement was to settle a dispute about a contract, and, therefore, how the contract applies is an essential term. Second, Eastman argues that the Rule 11 agreement is silent on "what releases will be executed" and that an enforceable agreement must include release provisions determining which liabilities are to be settled and how. Third, Eastman contends that the Rule 11 agreement lacks the essential terms regarding the means by which the amount of payment would be calculated and the manner in which payment was to be made. In other words, Eastman maintains that the agreement fails to specify what the parties are to pay, to whom payment should be made, or how interest, if any, is to be calculated. Here, the trial court awarded $85,000.00 in interest when enforcing a Rule 11 agreement that fails to mention interest.

In support of its arguments, Eastman cites to *McCalla*, 416 S.W.3d 416, and *Chopsticks, Inc.*, 242 S.W.3d at 122–23. In *McCalla*, two parties entered into an agreement where some of

the terms implied that the parties contemplated forming an additional contract in the future. *McCalla*, 416 S.W.3d at 417. The parties agreed to purchase a piece of property once a lease on the property was declared null and void, and they agreed to execute any documents necessary to carry out the terms of that agreement. *Id.* The court found that all of the essential terms were present (payment terms, mutual obligation, release, etc.), even though the parties agreed to agree in the future, because everything the court needed to enforce the agreement was present. *Id.* at 418.

In *Chopsticks, Inc.*, a landlord and tenant reached a mediated settlement agreement of their competing claims for breach of contract. 242 S.W.3d at 120–21. The settlement agreement stated that the tenant would make certain payments to the landlord, the parties would bear their own attorney fees, the parties would execute mutual releases, and the lawsuit would be dismissed with prejudice. *Id.* at 120. The court of appeals held that the settlement agreement was enforceable even though it failed to address the disposition of the tenant's security deposit or state the date to vacate premises (even though these terms "may have been significant to the parties' relationship") because those terms were unessential "collateral matters." *Id.* at 123.

We find the Rule 11 agreement, when taking into account the content of the contract which was the initial basis of their agreement, contains all essential terms of the agreement between the parties and is, therefore, enforceable. The Rule 11 agreement does not reference the applicability of the two percent variance provision or the notice issue because these issues were not in dispute at the time the parties entered into the agreement. Whether the two percent variance provision applies is a question of law, and insofar as it is a question of fact under

12

Eastman's interpretation of the provision, its applicability is dependent upon the auditor's findings rather than the parties' agreement.

The Rule 11 agreement is not silent on what releases will be executed. Paragraph eight states that Goodrich and Eastman "agree that they shall resolve all conflicts in, arising out of, or incident to" the case "through a settlement agreement which shall be drafted in accordance with the Auditor findings, . . . the [contract], . . . and offset by any [u]npaid [i]nvoices." The amount of payment is dependent entirely upon the auditor's findings and his valuation of any underreported gas, and here, Eastman did not dispute the auditor's findings or valuation. Under the facts of this case, the manner of payment and the amount and rate of interest are not essential terms. Accordingly, we find that the Rule 11 agreement is enforceable and overrule this point of error.

### III. Does the Two Percent Variance Provision Apply to Bar Recovery by Goodrich?

The 2012 audit of the January 2005 through December 2006 period concluded that the total gas volume for the audit period was 17,722,989 MMBTU and that Eastman undercredited Goodrich by 323,024 MMBTU. In its second point of error, Eastman argues that the trial court erred in awarding Goodrich money damages because the amount of undercredited gas was within the two percent variance allowed by the contract.

#### A. Waiver

First, Goodrich argues that Eastman waived its claims regarding the two percent variance provision. "Contractual rights can be waived." *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 722 (Tex. App.—Dallas 2004, no pet.). "Waiver is defined as 'an intentional

13

relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam) (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)); *Mandell v. Mandell*, 214 S.W.3d 682, 692 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Waiver may be "established by a party's express renunciation of a known right, or by silence or inaction for" a period long enough to demonstrate "an intention to yield the known right." *Aguiar v. Segal*, 167 S.W.3d 443, 451 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). "Waiver is largely a matter of intent." *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 654 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). For implied waiver to be found, "the surrounding facts and circumstances must clearly demonstrate intent." *Id.*; *see also Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 624 (Tex. App.—Texarkana 2002, pet. denied). To establish waiver by conduct, "that conduct must be 'unequivocally inconsistent' with claiming a known right." *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005).

After the Rule 11 agreement was executed and the 2012 audit springing from it had been completed, Eastman, for the first time, claimed that Goodrich's claims were barred by the two percent variance provision. Goodrich contends that Eastman waived this argument by agreeing to a new audit of the same time period and by failing to raise the argument prior to the Rule 11 agreement and 2012 audit. Goodrich's initial counterclaims against Eastman were based on the findings of the disputed 2007 audit, which showed an undercredit of 234,023 MMBTU, which is even less than the 323,024 MMBTU undercredit shown by the 2012 audit. However, Eastman

14

failed to raise the issue of the two percent variance provision until after the agreed-upon independent audit had been completed and its results released.

Here, nothing in the record shows Eastman to have explicitly waived this claim, and Eastman's behavior is not unequivocally inconsistent with claiming the right to invoke the two percent variance provision because the new audit's findings could have been more favorable to Eastman than those of the 2007 audit. Therefore, we find that Eastman did not waive the two percent variance claim.

### B.    The Two Percent Variance Provision

Eastman argues that the trial court erred in awarding Goodrich money damages because the amount of undercredited gas was less than two percent of the total volume during the two-year audit period and that a contractual provision protects it from liability for any variance of less than two percent.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the terms and language of the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). When discerning the contracting parties' intent, "we give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009).

The construction of an unambiguous contract is a question of law for the court, a question which we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Where a contract is unambiguous, the language of the contract alone expresses the parties' intent, and it

15

must be enforced as written. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984); *Yancey v. Floyd W. & Co.*, 755 S.W.2d 914, 918 (Tex. App.—Fort Worth 1988, writ denied). "A contract is not ambiguous simply because the parties disagree over its meaning." *Apache Corp.*, 294 S.W.3d at 168. Rather, "[a] contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

Paragraph 5.8 of the contract states,

If upon any test, the metering equipment in the aggregate is found to be inaccurate by two (2%) percent or more, registration thereof and any payment based upon such registration shall be corrected at the rate of such inaccuracy for any period of inaccuracy which is definitely known or agreed upon, or if not known or agreed upon, then for a period extending back one-half (1/2) of the time elapsed since the date of the last calibration, not to exceed fifteen (15) Days. Following any test, any metering equipment found to be inaccurate to any degree shall be adjusted immediately to measure accurately. If for any reason any meter is out of service or out of repair so that the quantity of Gas deliveries or redeliveries through such meter cannot be ascertained or computed from the readings thereof, the quantity of Gas so delivered or redelivered during such period same is out of service or out of repair shall be estimated and agreed upon by the parties hereto upon the basis of the best available data, using the first of the following methods which is feasible:

a. By using the registration of any check measuring equipment of the other party, if installed and registering accurately;

b. By correcting the error if the percentage of error is ascertainable by calibration, test or mathematical calculations; or

c. By estimating the quantity of deliveries or redeliveries during preceding periods under similar conditions when the meter was registering accurately.

We find that the two percent variance provision does not apply. Goodrich did not contend that the "metering equipment in the aggregate" was inaccurate by more than two

16

percent, and there was no such finding by the Rule 11 audit or the trial court. Simply put, the facts of this case do not implicate the provisions of paragraph 5.8.[6]

## IV. Did Goodrich Provide Proper Notice?

In its final point of error, Eastman contends that there is a disputed issue of material fact regarding whether Goodrich gave timely notice that it questioned the monthly gas statements for the audit period and that the trial court "misapplied the summary-judgment burden by making inferences in [Goodrich']s favor."

As we ruled hereinabove, the trial proceeding was not a summary judgment hearing, but rather a trial to the court based upon the three documents in evidence: the contract, the Rule 11 agreement and the auditor's report. Eastman's contention that Goodrich's claims are barred by a failure of timely notice is an affirmative defense claiming that a breach of contract or duty is legally excused, akin to limitations. *See Robbins v. Payne*, 55 S.W.3d 740, 747–48 (Tex. App.—Amarillo 2001, pet. denied); *Bracton Corp. v. Evans Const. Co.*, 784 S.W.2d 708, 710 (Tex. App.—Houston [14th Dist.] 1990, no writ). It, therefore, is an issue on which Eastman bore the burden of proof. *See In re Office of Attorney Gen.*, 422 S.W.3d 623, 631 n.10 (Tex. 2013) (orig. proceeding) ("'[T]he defendant bears the burden of proving an affirmative defense.'" (quoting BLACK'S LAW DICTIONARY 482 (9th ed. 2009))).

---

[6]Even if paragraph 5.8 applied, Eastman's formula is incorrect because the total volume of gas passing through the meters over a certain time period would be irrelevant to the percentage variance in the meters, but here, Eastman's contention, and calculation, depends entirely on the total volume passing through the meters. Eastman is arguing that because the underreported gas amounts to less than two percent of the total volume over that two-year audit period, that they are not liable for the variance. Eastman's formula depends on the total volume of the audit period—the larger the audit period, the larger the total volume, and the larger the volume, the smaller the underreported gas appears. Under Eastman's interpretation of paragraph 5.8, Goodrich could, by carefully selecting the audit period, artificially tailor the underreported amount of gas to be far over the two percent threshold, whereas, if the total meters were actually inaccurate by 2.1 percent, that percentage would hold true no matter the total volume passing through the meters, be it over a period of one month or ten years.

Here, the three documents in evidence, surprisingly, the only evidence in the case, fail to establish Eastman's claim that Goodrich failed to give timely notice.[7] Therefore, we overrule this point of error.

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:      November 10, 2014
Date Decided:        January 14, 2015

---

[7]The trial court did not take judicial notice of the court's file or the parties' pleadings. While the trial court requested and received post-hearing evidence from Goodrich, consisting of emails regarding the original 2007 audit, the emails were not properly offered or admitted into evidence, and they were disputed and objected to by Eastman. Therefore, the emails were not before the trial court under the holding of *Texas Health Enterprises, Inc. See Tex. Health Enters., Inc.*, 949 S.W.2d 313; *DaimlerChrysler Corp.*, 67 S.W.3d 294.