# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00713-CV

**Flare Ten-Booms, Appellant**

**v.**

**Deborah L. Obregon, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-GN-09-001198, HONORABLE PAUL R. DAVIS JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Flare Ten-Booms appeals from a summary-judgment order and final judgment issued in favor of appellee Deborah L. Obregon. In the underlying suit, Ten-Booms alleged that Obregon breached a "property sale contract" that called for Obregon to sell Ten-Booms a portion of a plot of land that she owned in exchange for a $10,000 down payment and a purchase price of $100,000. Ten-Booms raised a multitude of claims and sought several remedies, including specific performance. Obregon filed counterclaims for declaratory judgment and unpaid rent and also sought attorney's fees. Obregon also raised several affirmative defenses.

Later, Obregon filed a motion for summary judgment, claiming among other things that, to the extent that Ten-Booms sought to enforce the agreement between the parties as a contract for the sale of real property, the agreement was invalid, and seeking summary judgment on her affirmative defenses and counterclaims. The trial court granted Obregon's summary-judgment

motion. The trial court then held a hearing on Obregon's request for attorney's fees and issued a final judgment ordering Ten-Booms to pay the requested attorney's fees and six weeks of unpaid rent.

On appeal, Ten-Booms raises four issues relating to the summary-judgment order, contending that the trial court erred in granting summary judgment because (1) the agreement was valid and enforceable; (2) there was an issue of material fact as to the boundary line of the property that was the subject of the agreement; (3) Obregon breached the agreement and rendered Ten-Booms's contractual performance impossible; and (4) Obregon's conversion of the property to a condominium regime was invalid. Ten-Booms also raises two issues relating to the final judgment, asserting that the trial court erred in (1) concluding that he breached his lease and ordering him to pay rent from after the breach, and (2) ordering him to pay Obregon's attorney's fees.

Because Ten-Booms fails to challenge every ground for summary judgment advanced in the trial court, and because we conclude that the trial court did not err in determining that Obregon was entitled to summary judgment on one of the unchallenged grounds, we affirm the trial court's order granting summary judgment in favor of Obregon. Because we conclude that the trial court did not err in awarding Obregon unpaid rent in the amount of $1,484.17 or attorney's fees in the amount of $69,578.81, we affirm the trial court's final judgment.

## BACKGROUND

In 1997, Flare Ten-Booms began renting a small house in Austin for the operation of a hair salon. The house was on a single rectangular lot ("the Lot") that faced Lamar on one side and Evergreen on the other side. Each end of the Lot contained a small house used for commercial

2

purposes, and there was a small parking area between the two houses. Flare Ten-Booms rented the house on the Evergreen side of the Lot at 1704 Evergreen ("the Evergreen property"). In 2000, Deborah Obregon began renting the house on the other side, at 1703 South Lamar ("the Lamar property"), for the operation of a tattoo business. Ten-Booms and Obregon each had exclusive use of their respective houses, and they shared the use of the parking area.

During their tenancies, Ten-Booms and Obregon discussed the possibility of buying their respective leaseholds if the Lot ever became available. In 2005, Obregon learned that the Lot was on the market. Obregon contacted the property manager to discuss the possibility of buying the Lot. Obregon also spoke with Ten-Booms about whether he was interested in buying part of the Lot. At the time, Ten-Booms was in the process of filing for bankruptcy and was not in a position to obtain financing for his portion of the Lot. Obregon testified at her deposition that she and Ten-Booms planned for her to obtain financing, buy the Lot, and then wait for Ten-Booms to recover financially after his bankruptcy, when he could potentially obtain financing and buy his portion of the Lot. Obregon testified that she and Ten-Booms orally agreed that Ten-Booms's portion of the Lot would be $100,000, while her portion of the Lot would be $175,000. She testified that her portion of the Lot fronted South Lamar and was the larger portion of the Lot, thus making it more expensive than his portion. Ten-Booms testified in his deposition that he and Obregon orally agreed that they would divide the Lot evenly, making fifty percent of the Lot his portion and the other fifty percent her portion.

Obregon ultimately obtained two loans, one from a private lender and one from her parents, and bought the Lot for $275,000. Near the same time, Obregon prepared a lease-purchase

3

agreement ("the Agreement") that set forth the parties' agreement regarding the Lot. Both parties

signed the Agreement, which is titled "Lease Purchase Agreement" and states:

> This agreement is between Deborah Obregon (Lessor) and Flare Ten Booms (Lessee) for the lease purchase of 1704 Evergreen, Aus., Tx. 78704. The terms are as follows: The purchase price shall be $100,000.00, with $10,000.00 dollars [sic] down. The payments shall be $697.77 per month plus the cost of property tax and insurance, bringing the payment to $989.44 per month. This agreement shall be in effect for 36 months, after which time Mr. Ten Booms shall seek his own financing for the remaining balance of $83,101.31. In the event Mr. Ten Booms is unable to secure financing in a timely fashion he shall have the right to continue this agreement at whatever terms Mrs. Obregon is able to secure financing at. In the event of Mr. Ten Booms [sic] demise during the term of this lease the property shall revert back to Mrs. Obregon, with Mrs. Obregon paying the estate of Mr. Ten Booms the sum of $4,432.50.
>
> In the case of Mrs. Obregons [sic] demise this agreement shall legal[ly] bind her heirs or assigns to the term contained therein.
>
> During the effect of this agreement Mrs. Obregon and Mr. Ten Booms shall jointly share the cost of upkeep on the common areas, i.e. the parking lot and grounds keeping. They shall each bear all expense and upkeep of their individual buildings.

Near the time that Obregon closed on her purchase of the Lot, Ten-Booms paid her

$4,000 in cash. Ten-Booms testified at his deposition that the $4,000 was earnest money for his

portion of the Lot. A receipt made by Obregon for Ten-Booms at his request states that Obregon

received $4,000 from Ten-Booms as earnest money for the purchase of "1703 So. Lamar/Evergreen"

and that the money was "to be refunded if financing is not obtained." At another point in his

deposition, Ten-Booms testified that at the time he gave Obregon the $4,000, he did not think of the

money as a loan, gift, or part of a down payment. In later corrections to his deposition testimony,

4

Ten-Booms stated that he considered the $4,000 to be part of his $10,000 down payment. Obregon testified that she used the $4,000 toward closing costs associated with her purchase of the Lot.

After making the $4,000 payment, Ten-Booms made occasional further payments to Obregon. Ten-Booms paid Obregon a total of $9,825 toward his $10,000 down payment. Obregon testified at her deposition that Ten-Booms contacted her at some point and indicated that he wanted her to buy his option back. She made him an offer, which he rejected. Then, in 2007, Ten-Booms contacted a lender to try to obtain financing for his purchase of the Evergreen property. Ten-Booms testified that the lender denied him financing because the Agreement did not contain a specific legal description of the Evergreen property, nor was there other documentation showing the boundaries of the Evergreen property. Ten-Booms consulted an attorney, who told him that the Lot could not be legally subdivided.

Obregon learned of a person named Rick Vaughn who specialized in subdividing property. Obregon made an appointment to meet with Vaughn, and Obregon and Ten-Booms went to the meeting together. During the meeting, Vaughn told Obregon and Ten-Booms that city regulations prohibited the division of a piece of property as small as the Lot. Vaughn explained that Obregon would have to apply with the city for a variance but that it was doubtful that she would be successful. He also explained that it would cost at least $10,000 for her to go through the process of applying for a variance. Obregon testified in her deposition that she was shocked when she learned that it would be so difficult to divide the Lot. Vaughn informed Obregon and Ten-Booms that an alternative solution would be to convert their respective portions of the Lot into condominiums, which would allow Obregon to sell Ten-Booms the Evergreen property as a

condominium. Vaughn referred Obregon and Ten-Booms to several attorneys who could help them with a conversion.

Obregon began calling attorneys and attempting to make appointments to meet with them. She testified that she wanted Ten-Booms to go with her to an appointment but that he would no longer answer or return her phone calls. Eventually, she received a letter from an attorney stating that the attorney represented Ten-Booms and that the attorney wanted to continue negotiations regarding the Evergreen property on Ten-Booms's behalf. The attorney stated that Ten-Booms wanted Obregon to buy the Evergreen property at a fair market rate but was also willing to explore other feasible options. The letter also served as a formal rejection of Obregon's previous offer to buy Ten-Booms's option for $35,000. The parties continued communicating through their attorneys.

Several months after Obregon received the initial letter from Ten-Booms's attorney, Obregon filed for and obtained a conversion of the Lot into two condominium units, making the Lamar property "Unit One" and the Evergreen property "Unit Two." Under the condominium regime, the Lamar property is 5,439 square feet, and the Evergreen property is 3,941 square feet. After the conversion of the Lot, Obregon continued offering to sell the Evergreen property to Ten-Booms as a condominium unit, but he declined to buy it in that form. The parties eventually went to mediation, which resulted in the following mediated settlement agreement:

1. The present dispute will be abated until December 31, 2008.

2. Deborah Obregon will list [the Evergreen Property] for sale at the price of at least $150,000.00.

3. During the abatement period, Flare Ten-Booms will continue to pay monthly rent in the amount of $989.45 by the 15th of each month.

6

4. At the end of the abatement period, if Obregon has not closed on a sale of [the Evergreen property] for the price of $150,000.00 or more, then the parties will return to the exact same positions they were in before this agreement except that the deadline for Ten-Booms to pay "the remaining balance of $83,101.31" under the document entitled "Lease Purchase Agreement" shall be January 30, 2009.

5. This agreement is without prejudice to any party's opportunity to contest the validity or enforceability of the "Lease Purchase Agreement."

6. If Obregon succeeds in selling [the Evergreen property] for $150,000.00 or more before the end of the abatement period, then Ten-Booms shall receive $45,000.00 of the sale proceeds and the parties shall have no further obligations to each other.

7. During the abatement period, Ten-Booms will cooperate as reasonably necessary for Obregon and her agents to market the property, including providing access to [the Evergreen property], keeping [the Evergreen property] in reasonably clean and presentable condition, and will provide a key to Obregon to allow her reasonable access.

Obregon did not sell the Evergreen property by the end of the abatement period. Ten-Booms did not pay the remaining balance of $83,101.31 by January 30, 2009. Obregon sent Ten-Booms a notice of her intent not to renew or extend his lease past March 31, 2009 and asking him to vacate the Evergreen property by that date. Ten-Booms did not pay his February 2009 rent and left the Evergreen property by the end of that February. He filed suit against Obregon in April 2009. Obregon filed a motion for summary judgment on both traditional and no-evidence grounds, and the trial court granted the motion. After summary judgment was granted, Obregon filed a supplement to the record setting forth the attorney's fees she had incurred in the lawsuit. After a hearing addressing the issue of Obregon's attorney's fees, the trial court issued a final judgment in which it ordered that Ten-Booms pay Obregon $69,578.81 in attorney's fees and $1,484.17 in back rent. This appeal followed.

7

## DISCUSSION

Ten-Booms challenges the trial court's order granting summary judgment in favor of Obregon and the trial court's final judgment ordering Ten-Booms to pay Obregon attorney's fees and six weeks of back rent. We address the summary-judgment order and final judgment separately below.

### *Summary-Judgment Order*

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id*.

A "traditional" motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or prove as a matter of law each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom*, 26 S.W.3d at 530.

A party seeking a "no-evidence" summary judgment must assert that there is no evidence of one or more essential elements of the claims on which the non-movant will have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Holmstrom*, 26 S.W.3d at 530. If the nonmovant fails to produce more than a scintilla of probative evidence raising a genuine issue of material fact as to each challenged element on which he has the burden of proof, summary judgment is proper.

*Holmstrom*, 26 S.W.3d at 530. More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

In Ten-Booms's petition, he raised several claims, including claims for promissory estoppel, real-estate fraud, breach of contract, impossibility of performance, mutual mistake, and declaratory judgment. As relief, he sought reformation of the contract, specific performance, a constructive trust, a partition order, damages, and injunctive relief. Obregon filed counterclaims for declaratory judgment and back rent. She also raised several affirmative defenses, including no meeting of the minds, impossibility, mutual mistake, insufficient legal description, novation, expiration of the option, termination of the contract, abandonment of the tenancy, failure of consideration, and judicial estoppel. In Obregon's motion for summary judgment, she moved for traditional and no-evidence summary judgment on each of Ten-Booms's claims and requests for relief, as well as traditional summary judgment on her counterclaims and affirmative defenses.

The trial court granted Obregon's summary-judgment motion without specifying the grounds on which it did so. On appeal, Ten-Booms challenges only some of the issues raised in Obregon's summary-judgment motion. Based on our review of Obregon's summary-judgment motion and Ten-Booms's response to that motion, we conclude that at the least, the trial court could have granted summary judgment on Obregon's affirmative defense of failure of consideration, which is unchallenged on appeal.[1]

---

[1] A defendant may move for summary judgment on an affirmative defense, and when a defendant raises more than one affirmative defense in a motion for summary judgment, as Obregon did here, she need only conclusively establish one affirmative defense to be entitled to summary judgment. *See Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000); *Swilley v. Hughes*,

9

Failure of consideration occurs when, due to a supervening cause after an agreement is reached, the promised performance fails.[2] *See City of The Colony v. North Tex. Mun. Water Dist.*, 272 S.W.3d 699, 733 (Tex. App.—Fort Worth 2008, pet. dism'd); *U.S. Bank, N.A. v. Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 279 (Tex. App.—Dallas 2005, no pet.). In other words, failure of consideration occurs because of subsequent events. *See The Colony*, 272 S.W.3d at 733. For example, one party's failure to perform its obligations under the agreement may result in the other party's failure to receive the consideration set forth in the agreement. *See id.*; *U.S. Bank*, 170 S.W.3d at 279. To establish the affirmative defense of failure of consideration, the defendant must offer summary-judgment proof establishing: (1) the consideration for the property at the inception of the agreement; and (2) that the consideration later failed. *See, e.g., National Bank of Commerce v. Williams*, 84 S.W.2d 691, 692 (Tex. 1935).

Here, in Obregon's motion for summary judgment, she asserted that she could establish a failure of consideration because the Agreement required Ten-Booms to pay two sums of money as consideration—the down payment of $10,000 and the balance of the purchase price, which was $83,101.31—and Ten-Booms failed to perform either of the two requirements. In support of her argument, Obregon pointed to the Agreement, which set forth the two-part consideration required to purchase the Evergreen property, and evidence in the record establishing that Ten-Booms did not

---

488 S.W.2d 64, 67 (Tex. 1972); *Poncar v. Mission*, 797 S.W.2d 236, 239 (Tex. App.—Corpus Christi 1990, no writ).

[2] It is a general rule in Texas that a party must show that he has complied with his obligations under the contract to be entitled to specific performance. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008). Thus, a plaintiff seeking specific performance, as a general rule, must actually tender performance as a prerequisite to obtaining specific performance. *Id.*

pay the two amounts. Specifically, regarding Ten-Booms's failure to pay the down payment, Obregon cited the following testimony from Ten-Booms's deposition:

Defense: Your accounting . . . is that you had paid 9,825 dollars towards your down payment. Is that right?

Ten-Booms: Right, according to the figures.

Defense: And do you know what your down payment was supposed to be?

Ten-Booms: 10 thousand dollars.

Regarding Ten-Booms's failure to pay the purchase price of the Evergreen property, Obregon cited to two of Ten-Booms's responses to Obregon's requests for admissions:

No. 5: You have never tendered $83,101.31 to Ms. Obregon.

Response: Admitted

No. 36: You have never paid or tendered the purchase price of $83,101.31 for the Evergreen Property.

Response: Admitted

The evidence cited by Obregon shows that Ten-Booms, by his own admission, failed to pay both of the two parts of consideration set forth in the Agreement. Because the evidence establishes that Ten-Booms failed to perform his obligations under the Agreement, resulting in Obregon's failure to receive the consideration set forth in the Agreement, we conclude that the trial court did not err in determining that Obregon conclusively proved her affirmative defense of failure of consideration. *See The Colony*, 272 S.W.3d at 733; *U.S. Bank*, 170 S.W.3d at 279. Thus, the burden shifted to Ten-Booms to present evidence raising an issue of material fact. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Neely v. Wilson*, 331 S.W.3d 900, 912 (Tex.

11

App.—Austin 2011, pet. filed) (once defendant conclusively establishes each element of affirmative defense, burden shifts to plaintiff to produce evidence creating fact issue in order to defeat summary judgment).

In Ten-Booms's response to Obregon's conclusive proof of failure of consideration, he argued the following:

> [T]he accounting information that was identified in discovery is confusing and incomplete since [Ten-Booms] made several payments to [Obregon] in cash and [Obregon] evidently did not keep any reliable business records on the series of transactions. Further, it is uncontroverted in [Obregon's] motion that [Obregon] has documented that [Ten-Booms] paid $9,875.00 of the $10,000.00 down payment and thus has substantially performed his contracted down payment obligation. It would be improper for the Court to find failure of consideration in the face of substantial performance by [Ten-Booms] of his down payment obligation.

Regarding Ten-Booms's first argument—that he made several cash payments to Obregon that she did not account for—he did not provide the amounts of the alleged cash payments, nor did he provide any evidence showing that he made the alleged payments. Regarding his second argument—that he substantially performed the down-payment obligation—he did not cite to any legal authority supporting the proposition that payment of most of a down payment constitutes substantial performance of an agreement that also includes a sizable purchase price.

The substantial performance doctrine originated and is still mostly used in the context of construction contracts. *See Vance v. My Apartment Steak House, Inc.*, 677 S.W.2d 480, 482 (Tex. 1984); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 164 (Tex. 1982); *RAJ Partners, Ltd. v. Darco Constr. Corp.*, 217 S.W.3d 638, 643 (Tex. App.—Amarillo 2006, no pet.); *Beard Family P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 844 (Tex. App.—Austin

12

2003, no pet.).  But the doctrine has also been expanded to other types of contracts.  *See, e.g., E.P. Towne Ctr. Partners*, *L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 124-25 (Tex. App.—El Paso 2007, no pet.) (applied to settlement agreement); *Geotech Energy Corp. v. Gulf States Telecomms. & Info. Sys. Inc.*, 788 S.W.2d 386, 390 (Tex. App.—Houston [14th Dist.] 1990, no writ) (applied to contract for sale and installation of telephone system); *Continental Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 394 (Tex. App.—Texarkana 2003, pet. denied) (applied to contract for dredging services).

Substantial performance is defined as "performance of the primary, necessary terms of an agreement." *Black's Law Dictionary* 1252 (9th ed. 2009).  The doctrine of substantial performance is not available to a party when that party has made a willful departure from the terms of an agreement or omitted essential points of a project.  *See E.P. Towne*, 242 S.W.3d at 125; *Smith v. Smith*, 112 S.W.3d 275, 279 (Tex. App.—Corpus Christi 2003, pet. denied).

The down payment and purchase price of property set forth in an agreement are considered essential terms of that agreement.  *See Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006) (noting that Texas courts generally construe essential terms of contract to include price to be paid).  Ten-Booms's admitted failure to pay the balance of the purchase price and the full down payment—essential elements of the Agreement—precluded him from recovering under the substantial-performance doctrine.  *See id.*; *Smith*, 112 S.W.3d at 279.  Given that Ten-Booms also did not provide any evidence that he made additional cash payments to Obregon as he alleged, we conclude that the trial court did not err in determining that Ten-Booms failed to raise an issue of material fact as to Obregon's affirmative defense of failure of consideration.

If an appellant fails to challenge each ground for summary judgment advanced in the trial court, as Ten-Booms did here, we must affirm the summary judgment on the basis of the unchallenged grounds. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Long v. Long*, 196 S.W.3d 460, 468-69 (Tex. App.—Dallas 2006, no pet.); *Bailey v. Rogers*, 631 S.W.2d 784, 786 (Tex. App.—Austin 1982, no writ). Because we conclude that the trial court did not err in determining that Obregon was entitled to summary judgment based on the affirmative defense of failure of consideration, which Ten-Booms does not challenge on appeal, we affirm the trial court's order granting summary judgment in favor of Obregon.

### *Final Judgment*

In two issues, Ten-Booms challenges the trial court's final judgment, contending that the trial court erred in (1) ordering him to pay back rent, and (2) ordering him to pay Obregon's attorney's fees. We discuss each issue below.

### A.    Back Rent

Ten-Booms argues that the trial court erred in ordering him to pay $1,484.17 in rent for the dates of February 15 through March 31, 2009. The issue arose in the trial court when Obregon filed a counterclaim against Ten-Booms for breach of lease and sought unpaid rent for the last six weeks of Ten-Booms's lease. The record shows that on February 10, 2009, Obregon sent Ten-Booms a notice of her intent not to renew his lease past March 31, 2009. When Ten-Booms failed to pay his February rent, Obregon sent him a February 18, 2009 notice of default and termination of his lease, in which she stated that she would allow him to have access to the property until February 28, 2009. At the end of February, Obregon went to the house on the Evergreen

14

property and discovered that Ten-Booms had moved out. When Ten-Booms later filed suit, Obregon filed a counterclaim for the unpaid rent, and after granting summary judgment in favor of Obregon, the trial court ordered Ten-Booms to pay the rent.

Ten-Booms contends on appeal that the trial court erred in ordering him to pay the six weeks' worth of rent because Obregon breached the Agreement, thus excusing his performance under the Agreement, or because Obregon made his performance impossible by converting the Evergreen property into a condominium. However, regarding the first part of his argument, Ten-Booms does not explain how Obregon breached the Agreement or cite to any authority in support of the argument. He provides nothing more than the mere allegation that Obregon breached the Agreement. Without citations to authority or to the record, and without any other information explaining the argument, we cannot address it. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.")

Regarding Ten-Booms's argument of impossibility, the argument is in reference only to the Agreement as a sales contract, not as a lease. Ten-Booms argues only that Obregon converted the Lot into condominiums, making it impossible for him to *purchase* the Evergreen property in the form in which he wanted it. Thus, Ten-Booms does not provide any arguments regarding the validity of the Agreement as a lease, which is the relevant question in determining whether he owed back rent. In our review of the issue, we conclude that the trial court did not err in determining that the Agreement satisfied the requirements of a lease.

A "lease" for real property is an agreement by which a person owning property grants to another the right to use and occupy the property for a specified period of time in exchange for a

periodic payment of a stipulated price, which is usually referred to as rent. *Franklin v. Jackson*, 847 S.W.2d 306, 308 (Tex. App.—El Paso 1992, writ denied); *Black's Law Dictionary* 970 (9th ed. 2009). Here, the Agreement required periodic payments in the form of monthly payments from Ten-Booms to Obregon in the amount of $989.44. The term of the Agreement was thirty-six months. In the Agreement, the parties referred to Obregon as the "Lessor" and Ten-Booms as the "Lessee." Thus, the Agreement met all the elements of a lease. *See Franklin*, 847 S.W.2d at 308; *Black's Law Dictionary* 970 (9th ed. 2009).

Considerable evidence also demonstrates that the parties treated the Agreement as a lease. For example, the record shows that Ten-Booms made payments to Obregon in the amount of $989.44 each month and that he occupied the house on the Evergreen property until he received notice that Obregon intended not to renew the lease. Ten-Booms also made the following admissions in his response to Obregon's requests for admissions:

No. 12:       You were a tenant at the Evergreen Property.

Response:   Admitted.

No. 13:       You paid rent at the Evergreen Property.

Response:   Admitted.

Further, in the mediated settlement agreement in this case, Ten-Booms agreed to abate the dispute for a certain period of time and, during the abatement period, to "continue to pay monthly rent . . . by the 15th of each month." Finally, the record indicates that when Obregon sent Ten-Booms a notice terminating the lease and asking him to vacate the Evergreen property, he did so. Based on

16

the evidence in the record, we conclude that the trial court did not err in deeming the Agreement a valid lease.[3]

The original term of the Agreement expired on June 1, 2008, yet Ten-Booms remained in possession of the Evergreen property and continued to pay rent until February 2009. A tenant who continues to occupy the premises after expiration of a lease is a holdover tenant. *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 908 (Tex. 2007). We look at the lease itself to determine whether the terms of the lease continue in the event of a holdover tenancy. *Bockelmann v. Marynick*, 788 S.W.2d 569, 571-72 (Tex. 1990). A holdover tenant is presumed to be bound by covenants that were binding on him during the term of the lease. *Barragan v. Munoz*, 525 S.W.2d 559, 561 (Tex. Civ. App.—El Paso 1975, no writ). Even when the lease does not contain a holdover provision, if the tenant remains in possession and rent continues to be accepted by the landlord, the

---

[3] In an alternative argument, Ten-Booms contends that the Agreement was unenforceable as a sales contract under the statute of frauds based on an invalid legal description of the Evergreen property and that the Agreement therefore automatically became unenforceable as a lease. However, while a contract for the sale of real property becomes invalid under the statute of frauds if there is an invalid legal description of the property, *see Jones v. Kelley*, 614 S.W.2d 95, 99 (Tex. 1981); *Republic Nat'l Bank of Dallas v. Stetson*, 390 S.W.2d 257, 261 (Tex. 1965); *Nguyen v. Yovan*, 317 S.W.3d 261, 267 (Tex. App.—Houston [1st Dist.] 2009, pet. filed), a contract for the lease of the property does not necessarily become invalid under the same circumstances. Rather, when a contract for the lease of property is ambiguous, extraneous evidence is admissible to determine the meaning of the contract. *See Towers of Tex., Inc. v. J & J Sys., Inc.*, 834 S.W.2d 1, 2 (Tex. 1992) (trial court did not err in deeming property description in lease ambiguous and considering further evidence to resolve the issue); *United Interests, Inc. v. Brewington, Inc.*, 729 S.W.2d 897, 903 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (trial court did not err in determining that certain paragraphs in sublease were ambiguous and then admitting parole evidence to determine parties' intent). The record does not contain any instances of Ten-Booms raising the issue in the trial court or of either party presenting relevant extraneous evidence. Accordingly, we reject Ten-Booms's argument.

terms of the expired lease are presumed to continue unless there is an agreement to the contrary. *Id*. at 562; *see also Carrasco v. Stewart*, 224 S.W.3d 363, 368 (Tex. App.—El Paso 2006, no pet.).

When no new lease is formed and a tenant continues in possession of land covered by a prior lease, that tenant is either a tenant at will or a tenant at sufferance. *See Bockelmann*, 788 S.W.2d at 571; *ICM Mortgage Corp. v. Jacob*, 902 S.W.2d 527, 530 (Tex. App.—El Paso 1994, writ denied). A tenant at will is one who is in lawful possession of premises by permission of the owner or landlord and for no fixed duration. *See Fandey v. Lee*, 880 S.W.2d 164, 169 (Tex. App.—El Paso 1994, writ denied); *Virani v. Syal*, 836 S.W.2d 749, 751-52 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Black's Law Dictionary* 1604 (9th ed. 2009). A tenant at sufferance is a person who has been in lawful possession of property but who wrongfully remains as a holdover after his right to possession has expired. *See ICM Mortgage*, 902 S.W.2d at 530; *Black's Law Dictionary* 1604 (9th ed. 2009). "A tenant at will, in contrast to a tenant at sufferance, possesses the property with the owner's consent." *ICM Mortgage*, 902 S.W.2d at 530.

Here, there is no dispute that Ten-Booms continued to occupy the house on the Evergreen property after the lease expired in June 2008, making him a holdover tenant. *See Gym-N-I Playgrounds*, 220 S.W.3d at 908. The Agreement does not contain a holdover provision, and there is no evidence in the record suggesting that the parties made a new lease agreement after the lease expired. Thus, the terms of the expired lease are presumed to have continued. *See Barragan*, 525 S.W.2d at 561.

There is also no dispute that Ten-Booms was occupying the property with the permission of Obregon, which made him a tenant at will rather than a tenant at sufferance. *ICM Mortgage*, 902 S.W.2d at 530; *Virani*, 836 S.W.2d at 751-52. A tenancy at will is terminable at the

18

will of either party upon fair notice. *See ICM Mortgage*, 902 S.W.2d at 530; *Black's Law Dictionary* 1604 (9th ed. 2009). Obregon provided notice of her intent not to renew the lease in a letter dated February 10, 2009. At that point, she stated her intent to terminate the lease as of March 31, 2009.[4] After receiving the notice, Ten-Booms did not pay rent for the remaining term of the lease, from February 15, 2009, through March 31, 2009.

Given the circumstances in this case—that Ten-Booms's tenancy became a holdover tenancy when he occupied the Evergreen property after the Agreement expired, that the terms of the expired lease were presumed to continue, that Ten-Booms became a tenant at will after the Agreement expired, that his lease as a tenant at will ended on March 31, 2009, and that Obregon provided fair notice of her intent not to renew the lease—we conclude that the trial court did not err in ordering Ten-Booms to pay back rent from February 15, 2009, to the end of the lease term on March 31, 2009.[5] *See Gym-N-I Playgrounds*, 220 S.W.3d at 908; *ICM Mortgage*, 902 S.W.2d at 530; *Fandey*, 880 S.W.2d at 169-70; *Barragan*, 525 S.W.2d at 561.

## B.  Attorney's Fees

In his final issue, Ten-Booms asserts that the trial court erred in: (1) awarding attorney's fees to Obregon when there was no legal basis for doing so; and (2) awarding the amount of attorney's fees that it did, $69,578.81, when Obregon did not sufficiently establish that she had incurred that amount or that the amount was reasonable. We address each of the arguments below.

---

[4] Ten-Booms has not raised any issues related to Obregon's termination of the lease.

[5] The trial court's back-rent award of $1,484.17 for a month-and-a-half of tenancy was consistent with the payment terms of the lease, which required Ten-Booms to pay $989.44 per month.

### i. Legal Basis

Attorney's fees cannot be recovered absent a statute or contract allowing for their recovery. *See MBM Fin. Corp. v. The Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Whether a party is entitled to recover attorney's fees is a question of law, which we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999). Ten-Booms contends that the trial court did not have a legal basis for awarding attorney's fees because the final judgment did not include a declaratory judgment or any other ruling that would authorize such fees. Obregon counters that the attorney's fees were authorized by the trial court's previously issued summary-judgment order, which granted summary judgment on her declaratory-judgment counterclaim.

According to the Texas Uniform Declaratory Judgments Act, a court may award reasonable and necessary attorney's fees in any declaratory-judgment proceeding as long as the fees are equitable and just. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). A party who is awarded a declaratory judgment at a summary-judgment proceeding is entitled to attorney's fees. *See Rolling Lands Invs., L.C. v. Northwest Airport Mgmt., L.P.*, 111 S.W.3d 187, 201 (Tex. App.—Texarkana 2003, pet. denied); *Texas River Barges v. City of San Antonio*, 21 S.W.3d 347, 358 (Tex. App.—San Antonio 2000, pet. denied).

Here, Obregon sought summary judgment on all of Ten-Booms's claims and all of her counterclaims, including her counterclaim for declaratory judgment. In that counterclaim, she sought a declaration that Ten-Booms had no enforceable interest in the Evergreen property. The trial court granted Obregon's summary-judgment motion.[6] Thus, contrary to Ten-Booms's assertion, the

---

[6] Ten-Booms appealed from both the summary-judgment order and the final judgment, which the trial court stated was issued "[i]n accordance with th[e] summary judgment."

trial court did in fact issue a declaratory judgment. Accordingly, the trial court was authorized to award attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Rolling Lands*, 111 S.W.3d at 201; *Texas River Barges*, 21 S.W.3d at 358.

### ii. Amount of Attorney's Fees

Ten-Booms contends that the trial court erred in awarding Obregon $69,578.81 in attorney's fees because Obregon did not sufficiently establish that she had incurred that amount of fees or that the amount was reasonable.[7] The amount of attorney's fees awarded under the Declaratory Judgments Act rests within the sound discretion of the trial court, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that the fees be equitable and just, which are matters of law. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Id*.

In reviewing the reasonableness of an award of attorney's fees, a reviewing court should consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of

---

[7] Although Ten-Booms challenged the amount of the attorney's fees award in two separate issues in his brief, we combine the two into one based on the relevant case law. We also note that Ten-Booms did not cite to any legal authority in support of his challenge to the sufficiency of the evidence establishing the amount of attorney's fees.

the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). A trial court is not required to consider all of the factors in every case because the factors are merely guidelines, not elements of proof. *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.).

Here, Obregon included a request for attorney's fees in her declaratory-judgment counterclaim and in her motion for summary judgment. In her summary-judgment motion, she asked for leave of court to supplement the record with proof of attorney's fees. After the trial court granted Obregon's summary-judgment motion, Obregon filed a supplement to the record that included an affidavit from her attorney attesting to the reasonableness of the fees charged and a final invoice showing the total amount of attorney's fees incurred as $69,578.81. The trial court then held a hearing regarding the attorney's-fees issue, during which Ten-Booms's attorney cross-examined Obregon's attorney, Kim Lowe, regarding the fee amount. Ten-Booms did not present any opposing evidence. After the hearing, the trial court awarded the attorney's fees requested by Obregon.

The affidavit filed by Lowe addressed several of the factors set forth in *Arthur Andersen*. For example, Lowe described the nature of the case and the professional relationship with Obregon; explained the difficulty in defending against a multitude of claims brought by Ten-Booms, including the necessity of preparing a fifty-page summary judgment motion with six-hundred pages of supplemental documentary evidence; set forth Lowe's and her partner's experience and abilities; stated that the fee Lowe and her partner charged Obregon for their representation was two-hundred dollars per hour, which she stated was well within the range of usual and customary fees in the

region; and attached an invoice that generally described the labor required in representing Obregon and showed that Lowe and her partner spent a total of 347 hours on the case, totaling $69,578.81 in attorney's fees.

At the hearing on the attorney's-fees issue, Lowe further explained the attorney's fees incurred by Obregon. Lowe testified that she and her partner had to spend a great deal of time on the case because Ten-Booms raised many causes of action, amended his petition several times, and sought several remedies. Lowe further testified that her representation of Obregon precluded her from representing several other potential clients, whom she had to refer to other attorneys because she was busy representing Obregon. Ten-Booms's attorney cross-examined Lowe regarding her bookkeeping, pointing out that the invoice attached to her affidavit did not itemize work on a daily or weekly basis. Rather, the invoice provided general descriptions, such as "Legal Services: Research, Preparation, and Drafting Motion for Summary Judgment," and set forth the total number of hours taken for the task. In response to Ten-Booms's attorney's cross-examination, Lowe explained that she worked in a small office and that she kept track of time using sticky notes. She testified that after recording her time on the sticky notes, she then entered the information into her computer. She further explained that she had changed to a new time-recording system while she was working on Obregon's case, and many of the hours she spent on the case occurred before she began using the new system.

For purposes of summary judgment, an attorney's affidavit alone can sufficiently establish the reasonableness of attorney's fees if the affidavit is uncontroverted. *See In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App.—Tyler 2009, no pet.); *In re Estate of Friesenhahn*,

23

185 S.W.3d 16, 21 (Tex. App.—San Antonio 2005, pet. denied). Here, the record includes Lowe's affidavit as well as her testimony at a hearing on attorney's fees, neither of which was controverted by Ten-Booms. Although Ten-Booms's attorney cross-examined Lowe and argued during his closing argument that the attorney's fees were unreasonable, he did not present an affidavit or any other evidence that contested Lowe's affidavit or testimony. An opposing attorney's criticism of the amount of attorney's fees sought does not raise a fact issue regarding the reasonableness of the attorney's fees. *See Karen Corp. v. Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 126 (Tex. App.—Fort Worth 2003, pet. denied) (affidavit establishing reasonableness of attorney's fees must be controverted with facts demonstrating that fees were unreasonable); *Owen Elec. Supply, Inc. v. Brite Day Constr. Inc.*, 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("To create a fact issue, the non-movant's attorney must file an affidavit contesting the reasonableness of the movant's attorney's fee affidavit.").

Given the evidence presented by Obregon showing the reasonableness of the attorney's fees she incurred in this lawsuit, and considering the absence of opposing evidence presented by Ten-Booms, we conclude that the trial court did not abuse its discretion in awarding $69,578.81 in attorney's fees to Obregon.[8] *See Tyner*, 292 S.W.3d at 184; *Friesenhahn*, 185 S.W.3d at 21.

---

[8] Ten-Booms also argues that the attorney's fees awarded in this case were unconscionable and cites to rule 1.04(a) of the disciplinary rules of professional conduct, which states that "[a] lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee." Tex. Disciplinary R. Prof'l Conduct 1.04(a). Because we have concluded that the trial court did not abuse its discretion in determining that Obregon's attorney's fees were reasonable, we necessarily conclude that the fees were not unconscionable.

**C.    Conclusion Regarding Final Judgment**

Because we have concluded that the trial court did not err in awarding back rent and attorney's fees to Obregon, we affirm the trial court's final judgment.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order granting summary judgment in favor of Obregon, and we affirm the trial court's final judgment awarding Obregon unpaid rent in the amount of $1,484.17 and attorney's fees in the amount of $69,578.81.

_____

David Puryear, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   June 3, 2011