**AFFIRM; and Opinion Filed August 23, 2018.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-16-01167-CV

**LEVU GP, LLC, Appellant**
**V.**
**PACIFICO PARTNERS LTD AND GP PACIFICO, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-03983**

## MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Fillmore

Levu GP, LLC (Levu) appeals the trial court's judgment against it and in favor of Pacifico Partners LTD and GP Pacifico (collectively, Pacifico), finding Levu liable for breach of a lease agreement between the parties and awarding actual damages to Pacifico in the amount of $134,474.49. Challenging certain of the trial court's findings of fact and conclusions of law, Levu argues in three points of error that the trial court erred by determining Levu failed to provide proper and timely notice of its exercise of a purchase option in the lease agreement, and that there is no evidence to support the trial court's findings that Levu was in breach of the lease agreement at the time it attempted to exercise the purchase option. For the reasons that follow, we affirm the trial court's judgment.

# FACTS

Levu, as tenant, and Pacifico, as landlord, entered into a lease agreement dated July 11, 2012, for the lease of property at 2505 Pacific Avenue in Dallas (Lease). The Lease included an option for Levu to purchase the property from Pacifico for $800,000 cash "[f]ollowing [t]wenty-five months of continuous occupancy after Tenant's Commencement Date and Tenant having fulfilled all obligations under [the] Lease and not being in default." Section 23.28 of the Lease required that:

> All notices . . . under the provisions of this Lease shall be in writing . . . and shall be by one of the following: (i) mailed by first class, United States Mail, postage prepaid, certified, with return receipt requested[,] (ii) hand delivered by courier to the intended address and signed for by recipient[,] or (iii) sent by E-mail followed by a confirmatory letter as more particularly described in (i) or (ii) above.

Section 23.29 of the Lease additionally required that:

> All notices . . . under the provisions of this Lease shall be in writing, . . . and shall in addition to the methods of delivery described above [in section 23.28] always also be sent by E-mail with a request to recipient to return a read receipt and who shall always comply with this request.

In letters to Pacifico dated August 15, 2014, and October 15, 2014, Levu purported to provide notice of its intent to exercise its option to purchase the property subject of the Lease.[1] Levu sent the August 15, 2014 letter to Pacifico by United States regular mail, and did not email the letter to Pacifico. Frank Baskind, M.D., President of GP Pacifico and a partner in Pacifico Partners, Ltd., testified that he never received Levu's August 15, 2014 letter. Levu sent the October 15, 2014

---

[1] Levu investor and partner Adam Alfia sent an email to Pacifico on October 1, 2014, suggesting Levu was entertaining the possibility of exercising its purchase option under the Lease. In that email, Alfia indicated:

> . . . I have an investor that wants to help us out and part of the strategy would involve exercising our option to purchase the building from you at the figure listed in the contract.
>
> Please let me know if that option would alleviate a lot of the communication problems that we currently have between the two of us.
>
> I am open for discussion when you are available.
>
> Let me know your thoughts.

letter to Pacifico by United States certified mail, return receipt requested, but did not email the letter to Pacifico. Baskind testified that Pacifico received Levu's October 15, 2014 letter.

On April 6, 2015, Levu filed suit against Pacifico for breach of contract, seeking monetary damages and/or specific performance of the purchase option under the Lease. On May 28, 2015, Pacifico counterclaimed against Levu for breach of contract, seeking monetary damages and specific performance relating to multiple alleged breaches of the Lease. After a bench trial, the trial court rendered judgment for Pacifico on its breach of contract claim, awarded actual damages to Pacifico in the amount of $134,474.49, and ordered that Levu take nothing from Pacifico on its breach of contract claim. The trial court made findings of fact and conclusions of law. This appeal followed.

## STANDARD OF REVIEW

A trial court's findings of fact following a bench trial have the same weight and force as jury findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In a bench trial, the trial court is the sole judge of the credibility of the witnesses. *MBR & Assocs. v. Lile*, No. 02-11-00432-CV, 2012 WL 4661665, at *2 (Tex. App.—Fort Worth Oct. 4, 2012, pet. denied) (mem. op.). If a complete reporter's record is brought up on appeal, an appellant may challenge findings of fact for legal and factual sufficiency of the evidence. *Sunl Grp., Inc. v. Zhejiang Yongkang Top Imp. & Exp. Co. Ltd.*, 394 S.W.3d 812, 816 (Tex. App.—Dallas 2013, no pet.); *MBR & Assocs.*, 2012 WL 4661665, at *2. We review such challenges under the same standards we apply when reviewing evidence in support of a jury verdict. *Anderson*, 806 S.W.2d at 794.

In conducting a legal sufficiency review, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* So long as

the evidence falls within the zone of reasonable disagreement, we will not substitute our judgment for that of the fact-finder. *Id*. at 822. A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the finding. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). We will not disturb a finding of fact for factual insufficiency unless the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

We defer to a trial court's unchallenged findings of fact that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy*, *LLC,* 437 S.W.3d 518, 523 (Tex. 2014). Moreover, "[a] challenge to fact findings that form the basis of a conclusion of law or disposition will be overruled when the appellant does not challenge other fact findings that support that conclusion or disposition." *MBR & Assocs.*, 2012 WL 4661665, at *2.

Because the trial court has no discretion in determining what the law is or applying the law to the facts, *Tenaska Energy, Inc.,* 437 S.W.3d 518 at 523, we review the trial court's conclusions of law de novo. *Id.*; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We will uphold the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *BMC Software*, 83 S.W.3d at 794. If the trial court rendered the proper judgment, we will not reverse based on an erroneous conclusion of law. *Id*.

## ANALYSIS

Challenging certain of the trial court's findings of fact and conclusions of law, Levu asserts in three points of error that the trial court erred by determining Levu failed to provide proper and timely notice of its exercise of the purchase option in the Lease, and that there is no evidence to support the trial court's findings that Levu was in breach of the Lease at the time it attempted to exercise the purchase option.

–4–

*Levu Did Not Strictly Comply with Provisions of the Lease*
*Governing Delivery of Notice*

In its second point of error, Levu argues the trial court erred by determining it failed to properly give notice of its intent to exercise the purchase option contained in the Lease. Relevant to Levu's complaint are findings of fact numbers six through nine, which Levu has not challenged, conclusions of law numbers two and three, which Levu has not challenged, and conclusion of law number four, which Levu has challenged:

> [FOF] 6. Article 28 of the Lease required that any notice to be given under the Lease be done by (a) either United States certified mail, return receipt requested or receipted hand delivery and (b) by email.

> [FOF] 7. Plaintiff attempted to provide notice of its intent to exercise the purchase option on August 15, 2014 and October 15, 2014.

> [FOF] 8. Plaintiff's August 15, 2014 attempt to provide notice of its intent to exercise the purchase option was done only by United States regular mail, and Defendants did not receive it.

> [FOF] 9. Plaintiff's October 15, 2014 attempt to provide notice of its intent to exercise the purchase option was done only by United States certified mail, return receipt requested. Defendants did receive said October 15, 2014 letter.

> [COL] 2. The law in Texas requires strict compliance in the exercising of a purchase option.

> [COL] 3. Plaintiff did not meet the third element of its breach of contract claim and did not strictly comply with the purchase option by failing to comply with Article 23's notice provision in the Lease. Plaintiff's August 15, 2014 attempt to provide notice of its intent to exercise the purchase option failed because it was not done by (a) either United States certified mail, return receipt requested or receipted hand delivery and (b) by email.

> [COL] 4. Plaintiff did not meet the third element of its breach of contract claim and did not strictly comply with the purchase option by failing to comply with Article 23's notice provision in the Lease. Plaintiff's October 15, 2014 attempt to provide notice of its intent to exercise the purchase option failed because it was not done by (a) either United States certified mail, return receipt requested or receipted hand delivery and (b) by email.

In this point of error, Levu challenges only conclusion of law number 4 determining that Levu's October 15, 2014 letter to Pacifico purporting to exercise the purchase option did not strictly

comply with the notice provisions of the Lease governing the exercise of the purchase option.[2] We review this challenge de novo. *Tenaska Energy, Inc.*, 437 S.W.3d at 523.

It is a well-settled principle of law that, in the absence of equitable considerations, strict compliance with the provisions of an option contract is required. *Zeidman v. Davis*, 342 S.W.2d 555, 558 (Tex. 1961); *M7 Capital LLC v. Miller*, 312 S.W.3d 214, 222 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Generally, acceptance of an option must be unqualified, unambiguous, and strictly in accordance with the terms of the contract. *Miller*, 312 S.W.3d at 222. "[A]ny failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection." *Probus Props. v. Kirby*, 200 S.W.3d 258, 262 (Tex. App.—Dallas 2006, pet. denied) (internal citation omitted). Substantial compliance with the terms of an option contract is not sufficient to constitute acceptance. *Suiter v. Woodard*, 635 S.W.2d 639, 641 (Tex. App.—Waco 1982, writ ref'd n.r.e.).[3]

The Lease required all notices to be: (i) mailed by first class, United States Mail, postage prepaid, certified, with return receipt requested, (ii) hand delivered by courier to the intended address and signed for by recipient, or (iii) sent by email followed by a confirmatory letter as more particularly described in (i) or (ii) above. The Lease additionally required all notices to be emailed with a request to the recipient to return a read receipt.[4] The evidence of record supports the trial

---

[2] Due to the scope of this issue as presented by Levu, it is unnecessary for us to address Levu's August 15, 2014 letter to Pacifico purporting to exercise the purchase option, however we note the letter was sent neither by United States certified mail, return receipt requested, nor by email. Due also to the scope of this issue, it is unnecessary for us to address Adam Alfia's October 1, 2014 email to Pacifico indicating Levu was evaluating the possibility of exercising the purchase option, however we note the exercise of an option to purchase must be categorical. "Acceptance of an option to be effectual must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation and according to the terms or conditions of the option." *Suiter v. Woodard*, 635 S.W.2d 639, 641 (Tex. App.—Waco 1982, writ ref'd n.r.e); *see also City of Brownsville v. Golden Spread Elec. Co-op, Inc.,* 192 S.W.3d 876, 880 (Tex. App.—Dallas 2006, pet.denied) ("The rightholder's exercise of the option to purchase must be positive, unconditional, and unequivocal.").

[3] *See also Conway Centre, Ltd. v. Commonwealth Mortg. Co. of Am.*, No. 05-91-00374-CV, 1992 WL 13967, at *4 (Tex. App.—Dallas 1992, no writ) (not designated for publication).

[4] In a February 20, 2013 email to Pacifico, Levu requested that Pacifico strictly comply with the Lease's notice requirement, stating,

Allen, as per the lease, please send all requests in writing via certified mail. Email, is only a back up system for copying communications electronically.

–6–

court's unchallenged finding of fact number nine that Levu's October 15, 2014 letter was sent only by United States certified mail, return receipt requested. Because the October 15, 2014 letter was not emailed to Pacifico as required by the Lease, the letter did not strictly comply with the Lease's notice provisions for exercising an option to purchase the property, and was ineffectual. Accordingly, the trial court properly concluded, in conclusion of law number four, that delivery of the October 15 letter did not strictly comply with the terms of the Lease relating to the exercise of the purchase option. *See Probus Properties*, 200 S.W.3d at 261–62.

### *Levu Did Not Strictly Comply with a Provision of the Lease Governing Timing of Notice*

In its first point of error, Levu challenges the trial court's finding of fact number ten that the Lease required Levu "to exercise the purchase option after twenty five months of continued occupancy, which was August 11, 2014," and conclusion of law number five that Levu's August 15 and October 15, 2014 letters therefore failed to provide timely notice of the exercise of the purchase option. We construe this point of error to question whether legally or factually sufficient evidence supports the trial court's finding of fact number ten and whether the trial court correctly applied the law in conclusion of law number five.

The exercise of an option to purchase property must be timely under the terms of the agreement. This Court has concluded an optionee seeking to exercise an option to purchase real property must act in strict accordance with the time limits specified in a commercial lease:

> By its very nature, an option is time-sensitive. It has long been held that time is of the essence in an option because it is unilateral and for the benefit of the optionee. Even where the agreement does not expressly state that "time is of the essence," time is essential to the option and the holder of the option must comply with the

---

. . . As per the lease, we ask that you send us an email once again with a copy of the letter that you are sending. Both to myself and Avi (sic).

Further, the evidence indicates that on August 31, 2014, Pacifico sent a notice of default under the Lease for abated base rental to Levu by both United States certified mail, return receipt requsted, and email. Pacifico's strict compliance with Article 23 should have called Levu's attention to the Lease's notice requirements shortly before Levu mailed its October 15, 2014 letter to Pacifico.

terms of the option within the specific time period. Thus "any failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection."

*Probus Properties*, 200 S.W.3d at 261–62; *see also Atterbury v. Brison*, 871 S.W.2d 824, 829 (Tex. App.—Texarkana 1994, writ denied).

Exhibit P to the Lease, which expressly indicates it was "attached to and made a part of the Lease," provided that the purchase option arose "[f]ollowing [t]wenty-five months of continuous occupancy after [Levu's] Commencement Date." Section 1.3 of the Lease defined "Commencement Date" as the "date of signing of the Lease." The trial court found in unchallenged finding of fact number one that the Lease was dated July 11, 2012, which is apparent from the face of the Lease. The trial court, therefore, correctly found in finding of fact number two that the lease commenced and Levu took possession of the property on July 11, 2012.

It follows, then, that Levu's purchase option arose on August 11, 2014, twenty-five months after the date of signing of the Lease.[5] The Lease does not explicitly provide a deadline for exercising the purchase option. However, Section 23.12 of the Lease does explicitly provide that time is of the essence, and the Lease expired by its terms on August 31, 2014.[6] As a result, we conclude the window of time available for exercising the purchase option opened on August 11, 2014, and closed no later than August 31, 2014. To the extent the trial court determined in conclusion of law number five that the purchase option was available for one day only, on August 11, 2014, that conclusion was erroneous but of no import to our resolution of Levu's point of error.

---

[5] Levu investor and partner Adam Alfia testified that by the time Levu sent its August 15, 2014 letter to Pacifico purporting to exercise the purchase option, Levu had been in "continuous occupancy" of the property for twenty-five months.

[6] Section 1.4 of the Lease indicates that the "lease term" shall mean "the term commencing on the Commencement Date and continuing until the expiration of twenty five full months plus the partial month, if any, following the Commencement Date, unless sooner terminated as hereinafter provided."

The evidence is legally and factually sufficient to support the trial court's finding of fact number ten that the Lease required Levu "to exercise the purchase option after twenty five months of continued occupancy, which was August 11, 2014." The trial court did not err by determining, in conclusion of law number five, that Levu's August 15, 2014 letter to Pacifico failed to provide timely notice for the exercise of the purchase option, because the conclusion is supported by unchallenged finding of fact number eight indicating Pacifico did not receive the letter. The trial court also did not err by determining, in conclusion of law number five, that Levu's October 15, 2014 letter to Pacifico failed to provide timely notice for the exercise of the purchase option, because the letter was dated after the lease term ended on August 31, 2014.

*Levu Was In Breach of the Lease*

Exhibit P to the Lease provided that Levu had the right to exercise the purchase option conditioned upon "having fulfilled all obligations under [the] Lease and not being in default." In its third point of error, Levu argues there is legally insufficient evidence to support the trial court's finding of fact number twelve that, for a number of reasons, Levu was in breach of the Lease on October 15, 2014. We need only consider Levu's challenge to the trial court's finding of fact that Levu was in default of the Lease for failure to pay abated base rent and holdover rent, because our resolution of that challenge is dispositive. *See* TEX. R. APP. P. 47.1.

The trial court determined in finding of fact 12(d) that the Lease required Levu to pay abated base rent if Levu failed to filfill its financial obligations under the Lease, Levu failed to fulfill its financial obligations, Levu was required to pay abated base rent, and although Pacifico "made demand for payment of the abated base rent on August 31, 2014," Levu "failed to pay it." In addition, the trial court determined in finding of fact number 12(i) that "[Levu] failed to vacate

–9–

the Property at the end of the Lease term or pay Landlord holdover rent as required by Articles 20 and 4 of the Lease."

According to the testimony of Levu investor and partner Adam Alfia, Levu received a Pacifico letter dated August 31, 2014, indicating that, due to "multiple instances of default by [Levu]," which were not cured within the applicable cure period, Pacifico demanded payment of the entire amount of abated base rental due under the Lease. Baskind testified that on October 15, 2014, Levu was in default under the Lease "on the abated base rental . . . on some insurance payments and on property taxes." Alfia testified that Levu failed to pay the demand for abated base rent. Finally, Alfia acknowledged that Levu failed to pay any holdover rent attributable to its occupancy of the property after the end of the Lease term.

On appeal, Levu argues "[n]o Base Rental and certainly no Holdover Rent would have been due if Pacifico had simply acknowledged Levu's proper exercise of it[s] option [to] purchase the property."[7] However, the evidence at trial established that by August 31, 2014, Levu was in receipt of a Pacifico notice demanding payment of abated base rent, and after the end of the Lease term on August 31, 2014, Levu failed to vacate the property and was obligated to pay holdover rent, which it subsequently failed to pay. Therefore, the record contains more than a scintilla of evidence that unpaid rent was due before Levu attempted to exercise the option to purchase the property on October 15, 2014. As relevant to this appeal, Article 16 of the Lease indicated events of default under the Lease included Levu's failure "to pay any installment of Base Rental, Additional Rental or any other rent within five (5) days of the date it is due." Accordingly, the record contains legally sufficient evidence that Levu was in breach of the Lease on October 15, 2014, when it attempted to exercise the purchase option. Levu's argument that the evidence is

---

[7] The trial court entered a final judgment for Pacifico on its counterclaims for abated base rent, holdover rent, interest, and late fees, awarding it $134,474.49 in actual damages. Levu does not challenge that award on appeal.

legally insufficient to support the trial court's finding of fact number 12 that Levu was in breach of the Lease is without merit.

## CONCLUSION

The trial court did not err in concluding the delivery of Levu's October 15, 2014 letter to Pacifico purporting to exercise the purchase option failed to strictly comply with the notice provisions of the Lease. Further, the evidence is legally and factually sufficient to support the trial court's finding that the purchase option could be exercised by Levu after twenty-five months of continued occupancy, which occurred on August 11, 2014. The trial court did not err in concluding Levu's letters dated August 15, 2014, and October 15, 2014, failed to provide timely notice for the exercise of the purchase option under the Lease. Finally, the trial court did not err in finding Levu was in breach of the lease for failure to pay abated base rent and holdover rent, and these findings support the trial court's unchallenged conclusion of law number six that, because it was in default of the Lease, Levu did not strictly comply with the purchase option.

We resolve Levu's three points of error against it and affirm the trial court's judgment.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

161167F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LEVU GP, LLC, Appellant

No. 05-16-01167-CV      V.

PACIFICO PARTNERS LTD. AND GP
PACIFICO, Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-15-03983.
Opinion delivered by Justice Fillmore,
Justices Lang and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Pacifico Partners Ltd. and GP Pacifico recover their costs of this appeal from appellant Levu GP, LLC.

Judgment entered this 23rd day of August, 2018.